UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

BRIAN LUNDSTROM,

          Plaintiff,

   v.

CARLA YOUNG, an individual;
LIGAND PHARMACEUTICALS
INCORPORATED, LIGAND
PHARMACEUTICALS
INCORPORATED 401(k) PLAN; and
DOES 1 through 20,

          Defendants.

Case No. 3:18-CV-2856-GPC-MSB

**ORDER GRANTING DEFENDANTS'
MOTION TO DISMISS; GRANTING
DEFENDANTS' MOTIONS TO
SEAL; DENYING DEFENDANT
YOUNG'S MOTION FOR
SANCTIONS**

**[ECF Nos.: 46, 47, 48, 50, 56, 58]**

Before the Court are Defendant Carla Young's ("Young") motion to dismiss the first amended complaint ("FAC"), ECF No. 46, and Defendant Ligand Pharmaceuticals Incorporated's ("Ligand") motion to dismiss the FAC. ECF No. 50. Oppositions were filed on July 22, 2019. ECF Nos. 52, 53. Replies were filed on July 29, 2019. ECF Nos. 54, 55.

On September 19, 2019, Young also filed a motion for sanctions. ECF No. 58. An opposition was filed on October 4, 2019. ECF No. 60. A reply was filed on October 11, 2019. ECF No. 61.

The Court held a hearing on October 25, 2019. Based on the reasoning below, the Court **GRANTS** Defendants' motions to dismiss and **DENIES** Young's motion for sanctions.

## I.  Background

Plaintiff and Defendant Young married on or around August 21, 1998 in Seattle, Washington, and divorced on July 30, 2014 in Texas. ECF No. 45 ("FAC") ¶¶ 13, 15. The FAC alleges that Lundstrom became employed by Defendant Ligand on or about January 8, 2016 and began participating in the Ligand 401(k) Plan on or about April 1, 2016. *Id.* ¶¶ 16, 18. As part of Plaintiff's employment compensation package, Ligand granted Plaintiff 18,010 company stock options in two lots ("Incentive Stock Options"). *Id.* ¶¶ 20, 21.

On September 13, 2017, the District Court 231st Judicial District of Tarrant County issued an order requiring Plaintiff to pay $55,533.03 in child support arrearages to Young. *Id.* ¶ 22. According to the FAC, Young subsequently submitted a 401(k) Qualified Domestic Relations Order ("401(k) QDRO") and Stock Domestic Relations Order ("Stock DRO") to the District Court 231st Judicial District of Tarrant County for the court's signature. *Id.* ¶¶ 24, 32. Plaintiff alleges that the 401(k) QDRO submitted sought to transfer to Young 100 percent of the benefits held in Plaintiff's account in the 401(k) Plan, and the Stock DRO sought the transfer of 18,010 Incentive Stock Options to Young. *Id.* ¶¶ 23, 31. Plaintiff also alleges that he was not given an opportunity to review, approve, or contest the validity of the 401(k) QDRO or the Stock DRO prior to Young's submission of both documents to the District Court 231st Judicial District of Tarrant County. *Id.* ¶¶ 26, 27, 34, 35. The Texas court signed the 401(k) QDRO on or

about November 21, 2017, and signed the Stock DRO on or about January 22, 2018. *Id.*
¶¶ 28, 36.

According to the FAC, Young sent Ligand copies of the 401(k) QDRO and the Stock DRO in late 2017 and early February 2018, respectively. *Id.* ¶¶ 39, 48. On January 4, 2018, Ligand forwarded a copy of the 401(k) QDRO to Plaintiff. *Id.* ¶ 41. Plaintiff subsequently raised a number of issues concerning the validity of the 401(k) QDRO with Ligand. *Id.* ¶ 42. On January 27, 2018, Plaintiff notified Ligand that he was appealing the 401(k) QDRO with the 2nd Court of Appeals in Fort Worth, Texas. *Id.* ¶¶ 44. On February 1, 2018, the 2nd Court of Appeals in Fort Worth, Texas denied Plaintiff's appeal of the 401(k) and on February 9, 2018, Ligand transferred $62,063.47 from Plaintiff's 401(k) account to Young. *Id.* ¶¶ 45, 46.

On February 7, 2018, a Ligand employee notified Plaintiff that Ligand had received the Stock DRO which dictated the transfer all of Plaintiff's Incentive Stock Options to Young. *Id.* ¶ 49. Plaintiff subsequently raised a number of issues concerning the validity of the Stock DRO with Ligand. *Id.* ¶ 50. Plaintiff also notified Ligand that he was appealing the Stock DRO with the 2nd Court of Appeals in Fort Worth, Texas. *Id.* ¶¶ 44, 51. Plaintiff subsequently filed appeals with the Texas Supreme Court seeking to invalidate the 401(k) QDRO and Stock DRO. *Id.* ¶ 53. The FAC does not indicate the dates when these appeals were filed or the outcomes of the appeals.

On March 14, 2018, Ligand informed Plaintiff that if Ligand did not receive a hold or other standing order issued by a presiding judge before March 23, 2018, the company would proceed with distributing the Incentive Stock Options to Young on March 28, 2018. *Id.* ¶ 52. On March 14, 2018, Plaintiff informed Ligand that his appeals of the 401(k) QDRO and Stock DRO were pending in the Texas Supreme Court. *Id.* ¶ 53. On May 8, 2018, Ligand informed Plaintiff that the Incentive Stock Option transfer to Young would be processed on that day. *Id.* ¶ 55. Plaintiff alleges that 18,010 Incentive Stock Options were transferred to Young pursuant to the Stock DRO. *Id.* ¶ 57.

The FAC was filed on June 19, 2019.  ECF No. 45.  The FAC alleges the following causes of action:

| | |
|---|---|
| First Cause of Action: | Breach of fiduciary duty under ERISA as to Defendants Ligand and Does 1-20 for improperly approving the 401(k) QDRO |
| Second Cause of Action: | Breach of fiduciary duty as to Defendant Ligand for ignoring information that called into question the validity of the 401(k) QDRO |
| Third Cause of Action: | Breach of fiduciary duty as to Defendant Ligand for failure to follow ERISA procedures |
| Fourth Cause of Action: | Declaratory relief as to all Defendants to establish that the 401(k) QDRO is not a QDRO as defined by ERISA and the Internal Revenue Code and attorneys' fees |
| Fifth Cause of Action: | Supplemental state claim seeking declaratory relief as to all Defendants |
| Sixth Cause of Action: | Equitable and injunctive relief as to Ligand and Young |
| Seventh Cause of Action: | Equitable and injunctive relief as to Young |
| Eighth Cause of Action: | Unjust enrichment supplemental state claim as to Young |
| Ninth Cause of Action: | Breach of common law fiduciary duty supplemental state claim against Defendants Ligand and Does 1-20 |

## II.     Requests for Judicial Notice

Defendants filed requests for judicial notice accompanying their motions to dismiss.  ECF No. 46-3 ("Young RJN"); ECF No. 50-19 (Ligand RJN).  Plaintiff opposes.  ECF No. 52 at 21-22.

As a general rule, "a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion."  *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001).  However, two exceptions to this rule exist.  First, a district court may consider "material which is properly submitted as part of the complaint."  *Id.*  If the documents are not attached to the complaint, an exception exists if the documents' "authenticity . . . is not contested" and "the plaintiff's complaint necessarily relies" on them.  *Id.* (citations omitted).  Second, a court may take judicial notice of "matters of public record" under Federal Rule of Evidence ("Rule") 201.  *Id.* at 688-89.  However, under Rule 201, a court may not take judicial notice of a fact that is "subject to reasonable dispute."  Fed. R. Evid. 201(b).  If the contents of a matter of public record are in dispute, the court may take notice of the fact of the document at issue but not of the disputed information contained within.  *See id.* at 689-90.

Young requests that the Court take judicial notice of the following twenty documents, comprised of filings and orders in Tarrant County District Court in Texas or San Diego Superior Court:

1.      A true and correct copy of Tarrant County's 231st Judicial District's Court Order on September 13, 2017 which enters judgment for child support.

2.      A true and correct copy of Tarrant County's 233rd Judicial District's Court Order on April 27, 2017 Regarding Capias Order.

3.      A true and correct copy of Tarrant County's 233rd Judicial District's Court Order April 27, 2017 Regarding Commitment Order.

4.      A true and correct copy of Tarrant County's 231st Judicial District's Court Order on April 5, 2017 Regarding Relief to Collect Outstanding Judgments.

5.      A true and correct copy of Tarrant County's 233rd Judicial District's Court Order on March 4, 2015 Regarding Contempt Order.

6.      A true and correct copy of Tarrant County's 231st Judicial District's Court Order on November 21, 2017 Regarding Qualified Domestic Relations Order.

7.      A true and correct copy of Tarrant County's 231st Judicial District's Court Order on January 22, 2018 Regarding Domestic Relations Order.

8.      A true and correct copy of February 1, 2018 Second District Court of Appeal Opinion.

9.      A true and correct copy of February 26, 2018 Second District Court of Appeal Opinion.

10.     A true and correct copy of June 8, 2018 Supreme Court of Texas Order.

11.     A true and correct copy November 16, 2018 Supreme Court of Texas Order.

12.     A true and correct copy of Plaintiff's August 8, 2018 Notice of Registration filed in San Diego Superior Court, Case No. 18FL009397C.

13.     A true and correct copy of Ms. Young's declaration in support of opposition to Plaintiff's Ex Parte Application to Stay Earnings Withholdings Order, Case No. 18FL009397C, wherein Ms. Young objects to jurisdiction of California

14.     A true and correct copy of San Diego Superior Court's January 8, 2019 Order denying Plaintiff's Ex Parte Application.

15. A true and correct copy Tarrant County's 231st Judicial District's Court Order on March 22, 2017 to Seal Court Records.

16. A true and correct copy Tarrant County's 233rd Judicial District's Court Order on December 3, 2013 Regarding Enforcement by Contempt.

17. A true and correct copy Tarrant County's 233rd Judicial District's Court Order on February 13, 2015 Revoking Suspension.

18. A true and correct copy Tarrant County's 233rd Judicial District's Court Order on February 17, 2016 Regarding Order for Capias.

19. A true and correct copy of Plaintiff's Writs of Mandamus to the Second Court of Appeals regarding the QDRO and DRO.

20. A true and correct copy of Plaintiff's Petitions for Review to the Supreme Court of Texas regarding the QDRO and DRO.

Ligand joins Young's request for judicial notice of Young Exhibits 3-5 and 16-18. ECF No. 50-19. Ligand also requests judicial notice of the following sixteen documents, comprised of state court pleadings, state court orders, a U.S. Securities and Exchange Commission filing, and the record of a state court docket:

1. A true and correct copy of the Qualified Domestic Relations Order – Ligand Pharmaceuticals Inc. 401(k) Plan related to Case No. 233-515485-12, 233rd Judicial District, Tarrant County, Texas, dated November 21, 2017

2. A true and correct copy of the Domestic Relations Order for the Ligand Pharmaceuticals Incorporated 2002 Stock Incentive Plan, as Amended and Restated Effective May 23, 2016 related to Case No. 233-515485-12, 233rd Judicial District, Tarrant County, Texas, dated January 22, 2018.

3. A true and correct copy of a Memorandum Opinion in the Court of Appeals, Second District of Texas, Fort Worth, No. 02-18-00033-CV, dated February 1, 2018.

4. A true and correct copy of a redacted Petition for Review in the Supreme Court of Texas, No. 18-0093, dated February 5, 2018

5. A true and correct copy of a redacted Petition for Review in the Supreme Court of Texas, No. 18-0192, dated March 2, 2018

6. A true and correct copy of an Order Denying the Petition for Writ of Mandamus as amended in the Supreme Court of Texas, No. 18-0093, dated June 8, 2018

7. A true and correct copy of an Order Denying the Petition for Writ of Mandamus as amended in the Supreme Court of Texas, No. 18-0192, dated June 8, 2018

8. A true and correct copy of a redacted Motion for Rehearing in the Supreme Court of Texas, No. 18-0093, dated June 12, 2018

9. A true and correct copy of a redacted 1st Amended Motion for Rehearing in the Supreme Court of Texas, No. 18-0093, dated June 22, 2018.

10. A true and correct copy of Relator's Second Amended Motion for Rehearing in the Supreme Court of Texas, No. 18-0093, dated July 23, 2018.

11. A true and correct copy of Relator's Second Amended Motion for Rehearing in the Supreme Court of Texas, No. 18-0192, dated July 23, 2018

12. A true and correct copy of an Order Denying the Motion for Rehearing in the Supreme Court of Texas, No. 18-0093, dated November 16, 2018.

13. A true and correct copy of an Order Denying the Motion for Rehearing in the Supreme Court of Texas, No. 18-0192, dated November 16, 2018.

14. A true and correct copy of Ligand Pharmaceuticals Incorporated 2002 Stock Incentive Plan, as Amended and Restated Effective May 23, 2016, attached as Exhibit 10.1 to Ligand's Form S-8 filed with the SEC on July 29, 2016 (accessible from www.sec.gov).

8

15.     A true and correct copy of correct copy of the docket sheet for Lundstrom v. Young (No. 233-515485) in the Tarrant County District Court retrieved through the Lexis CourtLink service on March 11, 2019.

16.     A true and correct copy of a document titled "FAQs about Qualified Domestic Relations Orders" downloaded from the United States Department of Labor website on July 2, 2019 (accessible from https://www.dol.gov/sites/dolgov/files/EBSA/about-ebsa/ouractivities/ resource-center/faqs/qdro-overview.pdf).

## A.     401(k) QDRO and Stock DRO

A district court may consider "material which is properly submitted as part of the complaint." *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001). If the documents are not attached to the complaint, an exception exists if the documents' "authenticity . . . is not contested" and "the plaintiff's complaint necessarily relies" on them. *Id.* (citations omitted). "Even if a document is not attached to a complaint, it may be incorporated by reference into a complaint if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003). "For 'extensively' to mean anything under *Ritchie*, it should, ordinarily at least, mean more than once." *Khoja v. Orexigen Therapeutics*, Inc., 899 F.3d 988, 1003 (9th Cir. 2018).

Here, all of Plaintiff's claims are premised on the substance and administration of the 401(k) QDRO and Stock DRO. Furthermore, throughout the FAC, Plaintiff engages in a thorough discussion of and quotes directly from the 401(k) QDRO, FAC ¶¶ 4, 6, 8, 9, 16-18, 21-23, 27-28, 32, 34-36, and the Stock DRO, FAC ¶¶ 24-26, 30-35. Plaintiff has certainly incorporated these two documents by reference in the FAC.

Both Ligand and Young have provided copies of the 401(k) QDRO and Stock DRO in their requests for judicial notice. Ligand Exs. 1, 2; Young Exs. 6, 7. Although the 401(k) QDRO and Stock DRO provided by Ligand and Young are not originals, they are certified copies and are therefore self-authenticating. Fed. R. Evid. 902(4) (certified

copies of public records require the custodian or other authorized person to certify that the copies are correct). Thus, Court takes judicial notice of the fact of these 401(k) QDRO and Stock DRO and the contents therein.

## B. Texas State Court Documents

Young and Ligand have also filed requests for judicial notice of several court orders (Young Exs. 1-7, 10-11, 14-18; Ligand Exs.1-2, 7, 12-13), court opinions (Young Exs. 8-9, Ligand Ex. 3), court filings (Young Exs. 12-13, 19-20; Ligand Exs. 4, 9-11); and a court docket sheet (Ligand Ex. 15) (collectively, "Texas State Court Documents"). Several of these documents are identical; for example, Ligand Exhibits 4-7 are identical to Young Exhibits 10, 11, and 20.

While some of these documents are filed under seal in Texas state court, they nonetheless are readily verifiable and, therefore, the proper subject of judicial notice. *See Reyn's Pasta Bella, LLC v. Visa USA, Inc.,* 442 F.3d 741, 746 (9th Cir. 2006). Additionally, since these documents are either pleadings or documents otherwise recorded by the court, they are the proper subject of judicial notice. *See Burbank-Glendale-Pasadena Airport Auth. v. City of Burbank*, 136 F.3d 1360, 1364 (9th Cir. 1998) (granting judicial notice of pleadings filed in a related state court action); *Reynolds v. Applegate*, No. C 10-04427 CRB, 2011 WL 560757, at *1 n.2 (N.D. Cal. Feb. 14, 2011) (granting judicial notice of documents recorded in the county recorder office since "the Court may properly see them"); *Ewing v. Superior Court of California*, 90 F. Supp. 3d 1067 (S.D. Cal. 2015) (granting judicial notice of documents filed in state court case, including trial court's judgment and opinion of state appellate court); *Amato v. Narconon Fresh Start*, No. 3:14-CV-0588-GPC-BLM, 2014 WL 5390196, at *4 (S.D. Cal. Oct. 23, 2014) ("Orders in federal court cases and state licenses are matters of public record and are capable of accurate and ready determination.").

On a Rule 12(b)(6) motion to dismiss, when a court takes judicial notice of another court's opinion, it may do so "not for the truth of the facts recited therein, but for the existence of the opinion, which is not subject to reasonable dispute over its authenticity."

*Lee*, 250 F.3d at 690. Ligand argues that orders and pleadings referenced in the FAC may be considered on this motion because they are incorporated by reference in the FAC. Young RJN at 5-9. For example, Plaintiff refers to the fact that he filed appeals in the Texas Supreme Court. FAC ¶¶ 32-33. However, unlike the 401(k) QDRO and Stock DRO, Plaintiff's discussion of these proceedings and relevant filings are insufficiently extensive to be incorporated by reference under the *Ritchie* standard.

Plaintiff opposes Defendants' requests for judicial notice on the grounds that, while courts may take judicial notice of undisputed matters of public record, the court may not take judicial notice of disputed facts stated in public records. A court may take judicial notice of "matters of public record" under Rule 201, but may not take judicial notice of a fact that is "subject to reasonable dispute." Fed. R. Evid. 201(b). If the contents of a matter of public record are in dispute, the court may take notice of the fact of the document at issue but not of the disputed information contained within. *See Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001).

Here, Defendants seek judicial notice of the Court of Appeals, Second District of Texas, Forth Worth's denial of Plaintiffs' writ of mandamus on Febraury 1, 2018, (Ligand Ex. 3; Young Ex. 8); plaintiffs' petitions for writ of mandamus with the Texas Supreme Court challenging the 401(k) QDRO and Stock DRO filed on February 5, 2018 and March 2, 2018, respectively (Ligand Exs. 4, 5); the Texas Supreme Court denial of both of Plaintiff's petitions for writ of mandamus on June 8, 2018 (Ligand Exs. 6, 7); Plaintiff's motion for rehearing on June 12, 2018 (Ligand Ex. 8); the Texas Supreme Court denied the motions for rehearing on November 16, 2018 (Ligands Exs. 12, 13; Young Ex. 11). In response, Plaintiffs dispute the content of these documents.

Because Plaintiffs dispute their contents, the Court can take judicial notice of the fact that these orders were issued by the Texas appellate courts but not the contents contained therein. Thus, the Court **GRANTS** Defendants' requests for judicial notice of

the fact of the existence of the Texas State Court Documents, but **DENIES** Defendants' requests for judicial notice of the contents of these documents.[1]

### III.    Legal Standard on Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6)

Under Rule 12(b)(1) of the Federal Rules of Civil Procedure, a defendant may seek to dismiss a complaint for lack of jurisdiction over the subject matter.  The federal court is one of limited jurisdiction.  *See Gould v. Mutual Life Ins. Co. v. New York*, 790 F.2d 769, 774 (9th Cir. 1986).  As such, it cannot reach the merits of any dispute until it confirms its own subject matter jurisdiction.  *See Steel Co. v. Citizens for a Better Environ.*, 523 U.S. 83, 95 (1998).  When considering a Rule 12(b)(1) motion to dismiss, the district court is free to hear evidence regarding jurisdiction and to rule on that issue prior to trial, resolving factual disputes where necessary.  *See Augustine v. United States*, 704 F.2d 1074, 1077 (9th Cir. 1983).  In such circumstances, "[n]o presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Id.* (quoting *Thornhill Publishing Co. v. General Telephone & Electronic Corp.*, 594 F.2d 730, 733 (9th Cir. 1979)).  Plaintiff, as the party seeking to invoke jurisdiction, has the burden of establishing that jurisdiction exists.  *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).

Federal Rule of Civil Procedure 12(b)(6) permits dismissal for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).  Dismissal under Rule 12(b)(6) is appropriate where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory.  *See Balistreri v. Pacifica Police Dep't.*, 901 F.2d 696, 699 (9th Cir. 1990).  Under Rule 8(a)(2), the plaintiff is required only to set

---

[1] Ligand also requests judicial notice of the Ligand Pharmaceuticals Incorporated 2002 Stock Incentive Plan ("Stock Incentive Plan"), Ligand Ex. 14, and the FAQs about Qualified Domestic Relations Orders ("FAQs").  Ligand Ex. 16.  For similar reasons as stated above, the Court **GRANTS** Ligand's request for judicial notice of the Stock Incentive Plan and FAQs, but **DENIES** Defendants' requests for judicial notice of the contents of these documents.

forth a "short and plain statement of the claim showing that the pleader is entitled to relief," and "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

A complaint may survive a motion to dismiss only if, taking all well-pleaded factual allegations as true, it contains enough facts to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. "In sum, for a complaint to survive a motion to dismiss, the non-conclusory factual content, and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv*., 572 F.3d 962, 969 (9th Cir. 2009) (quotations omitted). In reviewing a Rule 12(b)(6) motion, the Court accepts as true all facts alleged in the complaint, and draws all reasonable inferences in favor of the plaintiff. *al-Kidd v. Ashcroft*, 580 F.3d 949, 956 (9th Cir. 2009). The Court evaluates lack of statutory standing under the Rule 12(b)(6) standard. *Maya v. Centex Corp*., 658 F.3d 1060, 1067 (9th Cir. 2011).

Where a motion to dismiss is granted, "leave to amend should be granted 'unless the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency.'" *DeSoto v. Yellow Freight Sys., Inc*., 957 F.2d 655, 658 (9th Cir. 1992) (quoting *Schreiber Distrib. Co. v. Serv-Well Furniture Co*., 806 F.2d 1393, 1401 (9th Cir. 1986)). In other words, where leave to amend would be futile, the Court may deny leave to amend. *See Desoto*, 957 F.2d at 658; *Schreiber*, 806 F.2d at 1401.

## IV. LEGAL DISCUSSION

The FAC presents nine causes of action, five of which are based upon ERISA (first, second, third, fourth, and sixth causes of action) and four of which are premised on state law claims (fifth, seventh, eighth, and ninth causes of action).

Defendants advance numerous arguments as to why Plaintiff's FAC should be dismissed. Specifically, they contend that: (1) the *Rooker-Feldman* doctrine bars consideration of Plaintiff's claims; (2) Plaintiff lacks standing; (3) the claims are barred by collateral estoppel; (4) Defendant Young is not subject to personal jurisdiction; and (5) Plaintiff has failed to state a claim as to several causes of action.

Because the Court concludes that Plaintiff lacks standing and that the *Rooker-Feldman* doctrine bars consideration of Plaintiff's claim, the Court **GRANTS** Defendants' motions to dismiss Plaintiff's FAC for lack of subject matter jurisdiction. Since the federal claims are dismissed under Rule 12(b)(1) on the basis of lack of subject matter jurisdiction, the Court concludes that it lacks the authority to exercise supplemental jurisdiction over Plaintiff's state law claims.

### A. *Rooker-Feldman* Doctrine

As courts of original jurisdiction, federal district courts lack jurisdiction to review the final determinations of a state court in judicial proceedings. *See Doe & Assocs. Law Offices v. Napolitano*, 252 F.3d 1026, 1029 (9th Cir. 2001). However, federal district courts do have jurisdiction over a "general constitutional challenge," i.e., one that does not require review of a final state court decision in a particular case. *Id.* (citing *Dubinka v. Judges of the Superior Court*, 23 F.3d 218, 221 (9th Cir. 1994)). This distinction between a permissible general constitutional challenge and an impermissible appeal of a state court determination may be subtle and difficult to make. *See id.* (citing *Worldwide Church of God v. Mcnair*, 805 F.2d 888, 891 (9th Cir. 1986)). To draw out this distinction, the court must ask whether it is "in essence being called upon to review the state court decision." *Id.* A de facto appeal exists "when the federal plaintiff both asserts as her injury legal error or errors by the state court and seeks as her remedy relief from

the state court judgment." *Kougasian v. TMSL, Inc.*, 359 F.3d 1136, 1139-40 (9th Cir. 2004). Once the court has found a de facto appeal, it must identify and decline to exercise jurisdiction over any issues that are "inextricably intertwined" with that appeal. *Doe*, 415 F.3d at 1043 (9th Cir. 2005). If the federal constitutional claims presented to the district court are 'inextricably interwined' with the state court's judgement, then [plaintiff] is essentially asking the district court to review the state court's decision, which the district court may not do." *Id.* If "consideration and decision have been accomplished, action in federal court is an impermissible appeal from the state court decision." *Id.* (citing *Worldwide Church of God*, 805 F.2d at 892). "Where the district court must hold that the state court was wrong in order to find in favor of the plaintiff, the issues presented to both courts are inextricably intertwined." *Id.*

The Ninth Circuit has cautioned against a broad application of the *Rooker-Feldman* doctrine and has noted that its application tends to be limited to the following types of claims: (1) when the plaintiff complains of harm caused by a state court judgment that directly withholds a benefit from (or imposes a detriment on) the plaintiff based on an allegedly erroneous ruling by the state court; or (2) when the plaintiff complains of a legal injury caused by a state court judgment, based on an allegedly erroneous legal ruling, in a case in which the plaintiff was one of the litigants. *Noel v. Hall*, 341 F.3d 1148, 1163 (9th Cir. 2003).

The analysis of *Rooker-Feldman* in *Carmona v. Carmona*, 603 F.3d 1041, 1051 (9th Cir. 2010) is instructive. There, the plaintiff claimed that qualified domestic relations orders issued by a family court were based upon an erroneous application of ERISA. Accordingly, the plaintiff sought relief from the state court orders and the dismissal of a Family Court order, and prayed for the federal district court to order that the proceedings in family court be dismissed with prejudice and to enjoin enforcement of

the orders.[2]  The Ninth Circuit found that *Rooker-Feldman* applied given that the plaintiff

asked the district court to set aside the state court orders.

### 1.    ERISA Claims Asserting Breaches of Fiduciary Duty

The first three causes of action assert claims that Ligand failed to perform its duties

as a fiduciary.  In the first cause of action, Plaintiff alleges that Ligand violated its duty

under ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1) by erroneously approving the 401(k)

QDRO even though it failed to comply with the requirements of ERISA and the terms of

the 401(k) Plan.  FAC ¶ 73.  Plaintiff also alleges that Ligand and Does 1-20 violated

their fiduciary duties by failing to properly investigate the 401(k) QDRO prior to

distributing the 401(k) funds to Young.  *Id.* ¶ 75.

In the second cause of action, Plaintiff alleges that Ligand ignored information that

called the validity of the 401(k) QDRO into question and failed to take reasonable steps

to determine the credibility of the 401(k).  Plaintiff raises the following issues with

Ligand concerning the validity of the 401(k) QDRO:

> (1) although the 401(k) QDRO expressly states that it relates "to the provision of
> marital property rights for Alternate Payee," it seeks the transfer of Plaintiff's post-
> marital property because Plaintiff began making contributions to the 401(k) Plan in
> January of 2016 long after his divorce to Ms. Young was finalized on July 30,
> 2014; (2) Plaintiff advised Ligand that he did not owe any spousal support (per
> divorce decree) and that the child support he did owe (approximately $55,000 at
> the time) was being paid through wage garnishments from his Ligand paychecks
> ($3,500 per month); and (3) the fact that the 401(k) QDRO itself did not specify a
> fixed dollar amount that Plaintiff allegedly owed to Ms. Young that would be
> satisfied through the 401(k) QDRO.

---

[2] Similarly *DJ St. Jon* is instructive for the present case since there the Plaintiffs asserted that that they should have been given a "fairness hearing" in accordance with Cal. Rules of Court Rule 3.769 thereby challenging the state court's decision that notice of entry be given to the class pursuant to Cal. Rules of Court Rule 3.771.  *DJ St. Jon v. Tatro*, No. 15-CV-2552-GPC-JLB, 2016 WL 1162678, at *8 (S.D. Cal. Mar. 23, 2016), *aff'd sub nom. Jon v. Tatro*, 698 F. App'x 917 (9th Cir. 2017).

FAC ¶ 85.  Plaintiff argues that Ligand, as the plan administrator, had the duty to take reasonable steps to determine the credibility of evidence questioning the validity of a QDRO, and therefore breached its fiduciary duty owed to Plaintiff by "blindly" transferring $62,063.47 from Plaintiff's 401(k) account to Young.  *Id.* ¶¶ 81, 82, 87.

While the first and second causes of action avoid a direct challenge of the state court orders, they are inextricably intertwined with the state court judgment.  The alleged failures to investigate and failure to take steps to determine credibility of  the 401(k) QDRO are nothing more than challenges to the state court orders. Plaintiff's argument supposes that the plan administrator could operate as a tribunal free to question the credibility of evidence submitted to the Texas court and ignore the effect of a court order.  It further requires this Court to examine the factual and legal basis for state court order in determining whether the QDRO was valid.  "Where the district court must hold that the state court was wrong in order to find in favor of the plaintiff, the issues presented to both courts are inextricably intertwined." *Worldwide Church of God*, 805 F.2d at 892.  When the federal constitutional claims presented to the district court are 'inextricably interwined' with the state court's judgement, then [plaintiff] is essentially asking the district court to review the state court's decision, which the district court may not do." *Doe*, 415 F. 3d at 1043.  As to these two causes of action, Plaintiff is ultimately seeking a review of the state court decision.  Accordingly, the Court **DISMISSES** the first and second causes of action.

In the third cause of action, Plaintiff alleges that Ligand breached its fiduciary duty under 29 U.S.C. § 1056(d)(3)(G) to (1) establish reasonable, written procedures to determine the qualified status of a domestic relations order; (2) communicate those procedures to alternate payees; and (3) administer the distribution of benefits under qualified orders.  According to the FAC, Ligand either does not have a written policy in place for determining the qualified status of a domestic relations order or has been unwilling to share such since first requested in November of 2018, and Ligand also failed to send Plaintiff a written communication advising him that the 401(k) QDRO satisfied

the requirements under the 401(k) Plan and the Internal Revenue Code and was in fact determined to be a QDRO.  FAC ¶ 94.  At first glance, it would appear the third cause of action is not inextricably intertwined with the state court orders since it would be unnecessary for this Court to review the Texas court decision to find a breach of fiduciary duty.  As such, ostensibly, *Rooker-Feldman* does not provide the basis to dismiss the third cause of action.

On the other hand, Plaintiff essentially attacks the lack of an established protocol to examine the validity of state court orders.  Plaintiff does not describe what the written procedures would have provided.  However, in order to be meaningful to Plaintiff, such procedures would likely involve the examination of the legal and factual basis for the state court order in violation *Rooker-Feldman*.  Ultimately, as to the third cause of action, the distinction between a permissible general constitutional challenge and an impermissible appeal of a state court determination is more subtle and difficult to make.  While it is a close call, the Court elects not to dismiss the third cause of action under *Rooker-Feldman.*

Accordingly, the Court will **DISMISS** the first and second causes of action with prejudice.  As to the third cause of action, it survives *Rooker-Feldman* analysis but will be dismissed on the alternate grounds analyzed below.

## 2. ERISA Claims Seeking Declaratory and Injunctive Relief

The fourth cause of action names all of the Defendants and attacks the state court judgment directly, petitioning the Court to declare that both the 401(k) QDRO and the Stock DRO are invalid.  FAC ¶ 102.  In so far as Plaintiff seeks the invalidation of the QDRO and DRO, his claim is barred by *Rooker-Feldman*.  Therefore, the Court **DISMISSES** the fourth cause of action with prejudice.

The sixth cause of action is brought against both Ligand and Young based on Ligand's transfer and Young's receipt of the funds from Plaintiff's 401(k) fund pursuant to the QDRO and stock options pursuant to the DRO.  This claim is also inextricably intertwined with the validity of the QDRO and DRO.  Young received funds by virtue of

a QDRO and DRO issued by a state court judge and the relief sought by Plaintiff necessitates the invalidation of the QDRO and Stock DRO, which, for the reasons stated above would be barred by *Rooker-Feldman*. Therefore, the Court **DISMISSES** the sixth cause of action with prejudice. *See Williams-Ilunga v. Directors/Trustees of Producer-Writers Guild of Am. Pension Plan*, 682 F. App'x 633, 634 (9th Cir. 2017) ("Under *Rooker-Feldman*, there is no defect to be cured: a subsequent federal claim is completely barred if it amounts to 'a de facto appeal from a state court judgment.'") (citing *Kougasian v. TMSL, Inc.*, 359 F.3d 1136, 1139 (9th Cir. 2004)).

In sum, the Court **DISMISSES** the fourth and sixth causes of action with prejudice.

### B.   Standing Pursuant to 12(b)(1)

Defendants allege that Plaintiff does not have standing to pursue the ERISA claims because he has failed to assert an injury in fact. Plaintiff counters that he has standing under ERISA, 29 U.S.C. §§ 1001, Et Seq.

"To establish standing to sue under ERISA, [plaintiffs] must show that they are plan 'participants.'" *Poore v. Simpson Paper Co.,* 566 F.3d 922, 925 (9th Cir. 2009). Under Section 502(a)(2), standing is granted to a plan participant to bring an action against a defendant who breaches a fiduciary duty with respect to that plan. *See* 29 U.S.C. § 1132(a)(2). An ERISA plan participant is "any employee or former employee of an employer . . . who is or may become eligible to receive a benefit of any type from an employee benefit plan which covers employees of such employer." 29 U.S.C. § 1002(7).

"To bring an ERISA lawsuit, a plaintiff must not only have standing under the statute, but must also meet the standing requirements of Article III of the U.S. Constitution." *Wells v. California Physicians' Serv.*, No. C05-01229 CRB, 2007 WL 926490, at *3 (N.D. Cal. Mar. 26, 2007) (citing cases). "[T]he irreducible constitutional minimum of [Article III] standing" contains three elements, namely, "[t]he plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of

the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)).

"To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Id.* at 1548 (quoting *Lujan*, 504 U.S. at 560). An injury may be "concrete" even if it is intangible, and "in determining whether an intangible harm constitutes injury in fact, both history and the judgment of Congress play important roles." *Id.* at 1549. The judgment of Congress is "instructive and important" because "Congress is well positioned to identify intangible harms that meet minimum Article III requirements." *Id.* Thus, "Congress has the power to define injuries and articulate chains of causation that will give rise to a case or controversy where none existed before." *Id.* (quoting *Lujan*, 504 U.S. at 580 (Kennedy, J., concurring)). Nonetheless, "Congress' role in identifying and elevating intangible harms does not mean that a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right." *Id.* at 1549. Thus, while a procedural violation "can be sufficient in some circumstances to constitute injury in fact," for example, where there is a "risk of real harm," a "*bare procedural violation*, divorced from any concrete harm" does not "satisfy the injury-in-fact requirement of Article III." *Id.* (emphasis added). *Cf. Harris v. Amgen, Inc.*, 573 F.3d 728, 733 (9th Cir. 2009) (plaintiffs had standing under ERISA to recover losses occasioned by breach of fiduciary duty based on the plan administrators' purchase of stocks with artificially inflated prices); *Ziegler v. Connecticut Gen. Life Ins. Co.*, 916 F.2d 548, 551 (9th Cir. 1990) (plaintiffs need not allege injuries for certain ERISA violations, including a plan fiduciary's failure to perform for the exclusive benefit of participants and their beneficiaries). In *CIGNA*, the Supreme Court maintained a required showing of "actual harm" with respect to the question of standing. *CIGNA Corp. v. Amara*, 563 U.S. 421, 444 (2011).

Here, Plaintiff has alleged that the 401(k) QDRO contained the following defects: (1) the 401(k) QDRO did not specify a fixed dollar amount that would be provided to Young through the QDRO; (2) the 401(k) QDRO erroneously references "marital property rights"; and (3) the child support that Defendant owed Plaintiff was being paid through Defendant's wage garnishments. *Id.* ¶ 42. He then claims that his concrete, actual injury is "the improper transfer of $66,400 from his Ligand 401(k) account and improper transfer of 18,010 stock options granted to Plaintiff under the Ligand Pharmaceuticals Incorporated 2002 Stock Incentive Plan."[3] ECF No. 52 at 17-18.

In order to find that Plaintiff has suffered a concrete harm based on the transfer of 401(k) funds and stock options, this Court would be called upon to judge the prior state court orders – i.e., the validity of the 401(k) QDRO and Stock DRO. As discussed above, such review is not permitted under *Rooker-Feldman*.

As to the third cause of action based upon failure to establish procedures to determine the qualified status of a qualified relations order, Plaintiff has similarly failed to point to any concrete harm that resulted from the absence of such procedures and the failure to communicate them and apply them.

Since Plaintiff has failed to identify a separate concrete or actual harm that is not barred by *Rooker-Feldman*, he has failed to meet the requirements for standing and Defendants' motion to dismiss for lack of standing will be granted.

As such, the Court therefore **GRANTS** Defendants' motion to dismiss based on standing as to all five claims brought under ERISA (first, second, third, fourth, and sixth causes of action).

_____

[3] Young asserts that Plaintiff's allegations regarding his concrete, actual injury is limited to the "improper transfer to and retention by Defendant of $66,400 from his Ligand 401(k) account in violation of ERISA's anti-alienation provision, and the improper transfer to and retention by Defendant of 18,010 stock options granted to Plaintiff under the Ligand Pharmaceuticals Incorporated 2002 Stock Incentive Plan, among other injuries (including those under ERISA and common law)." ECF No. 53 at 9

### C.     Ligand's Fiduciary Duty Under ERISA

Of the three fiduciary duty claims under ERISA, only the third cause of action has survived *Rooker-Feldman* analysis.  Assuming Plaintiff could show standing on the third cause of action, this cause of action fails to state a claim upon which relief can be granted.

In the third cause of action, Plaintiff asserts that Ligand breached its fiduciary duty under ERISA by failing to (1) establish reasonable, written procedures to determine the qualified status of a domestic relations order; (2) communicate those procedures to alternate payees; and (3) administer the distribution of benefits under qualified orders. Ligand contends that it has met its statutory duty under ERISA with respect to its approval process of the 401(k) QDRO.  ECF No. 49 at 29.  The Court agrees.

The duty for plan administrators in the QDRO approval process is one that is "relatively discrete, given the specific and objective criteria for a domestic relations order that qualifies as a QDRO."  *Kennedy v. Plan Adm'r for DuPont Sav. & Inv. Plan*, 555 U.S. 285, 301-02 (2009).  The *Kennedy* court likened the requirements to a "statutory checklist" that would "spare an administrator from litigation-fomenting ambiguities."  *Id.* at 302 (internal citations omitted).  A plan administrator should not be required to determine questions of law or factually complex and subjective determinations.  *Id*.  In fact, "[w]hen a QDRO is found to meet the statutory criteria, the law requires the [plan adminstrator's] compliance with the QDRO *without* inquiry as to whether a valid QDRO actually complies with state laws."  *Gray v. I.B.E.W. Local 332 Pension Tr*., No. C09-03782 HRL, 2010 WL 3893590, at *3 (N.D. Cal. Sept. 30, 2010), *aff'd*, 495 F. App'x 831 (9th Cir. 2012) (emphasis in original).

Here, Ligand properly followed a checklist which satisfied the specificity requirements under 29 U.S.C. § 1056(d)(3)(C) and (D), to determine the validity of the 401(k) QDRO.  ECF No. 49 at 30-31.  Meanwhile, Plaintiff urges the Court to require more of Ligand based upon DOL Advisory Opinion 1999-13A and to hold that

Defendants had a further fiduciary duty to investigate the validity of the 401(k) QDRO. The Court disagrees.

DOL Advisory Opinion 1999-13A provides guidance on the duties of a plan administrator in the processing of a QRDO. It was provided at the request of United Airlines as plan administrator and prompted by the submission and approval of dozens of questionable domestic relations orders. These orders were "questionable" or "sham" in nature since they suffered from several suspicious defects, including that several came from the same lawyer and listed the alternate payees and partipicants as having the same address. The DOL Advisory Opinion observed that a plan administrator who has received a document purporting to be a DRO must carry out his responsibilities under § 206(d)(3) in a manner consistent with his general fiduciary duties. However, the DOL stated clearly that the plan administrator is not required "to review the correctness of a determination by a competent State authority pursuant to State domestic realtions law." DOL Advisory Opinion 1999-13A. Instead, where credible evidence that questions the validity of a QDRO surfaces, "the administrator must decide how best to resolve the question of validity without inappropriately involving the plan in the State domestic relations proceeding." That is because, "the administrator may not independently determine that the order is not valid under State law and therefore is not a 'domestic relations order.'" *Id*.

According to this advisory opinion, the appropriate course of action depends upon the actual facts and circumstances of the case. *Id*. Here, there was no suggestion of a sham QDRO that revealed any fraud by an attorney or participant or beneficiary. In fact, Plaintiff's challenge of the validity of the QDRO relies on the theory that the trial court erred in granting it, an error that was appealed to the appellate court. Given these claims, it is undisputed that the plan administrator waited until the court of appeals had rejected Plaintiff's challenges before it processed the QDRO. As a result, viewing the facts most favorable to Plaintiff, he has failed to identify a fiduciary duty that Ligand did not perform.

Accordingly, the third cause of action is **DISMISSED** with prejudice.

## D.  Pendent Jurisdiction

The supplemental jurisdiction statute provides:

> In any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

28 U.S.C. § 1367(a).  The Ninth Circuit has concluded that "[t]he statute's plain language makes clear that supplemental jurisdiction may only be invoked when the district court has a hook of original jurisdiction on which to hang it."  *Herman Family Revocable Trust v. Teddy Bear*, 254 F.3d 802, 805 (9th Cir. 2001) ("[I]f the federal claim [is] dismissed for lack of subject matter jurisdiction, a district court has no discretion to retain the supplemental claims for adjudication.").  "[S]upplemental jurisdiction cannot exist without original jurisdiction . . . where there is no underlying original federal subject matter jurisdiction, the court has no authority to adjudicate supplemental claims under § 1367."  *Id*. (*citing Textile Prods., Inc. v. Mead Corp*., 134 F.3d 1481, 1485–86 (Fed. Cir. 1998); *Saksenasingh v. Sec'y of Educ*., 126 F.3d 347, 351 (D.C. Cir. 1997).

In *Herman*, the Ninth Circuit vacated a district court's order where the district court had concluded that it lacked admiralty jurisdiction over the federal claims, but nevertheless proceeded to exercise supplemental jurisdiction over the state-law claims and entered judgment for defendants.  *Id*. at 804.  The Ninth Circuit distinguished between the exercise of supplemental jurisdiction when the federal claim has been dismissed under Rule 12(b)(1) as opposed to 12(b)(6), finding that "[a] dismissal on the merits is different from a dismissal on jurisdictional grounds.  If the district court dismisses all federal claims on the merits, it has discretion under § 1367(c) to adjudicate the remaining claims; if the court dismisses for lack of subject matter jurisdiction, it has no discretion and must dismiss all claims."  *Id*. at 806.

Since this Court has dismissed Plaintiff's sole federal claim under Rule 12(b)(1) on the basis of lack of subject matter jurisdiction, the Court therefore concludes that it lacks the authority to exercise supplemental jurisdiction over Plaintiff's state law claims. *See id.; see also, e.g., Langer v. Kacha*, No. 14-CV-2610-BAS(KSC), 2016 WL 524440, at *5 (S.D. Cal. Feb. 10, 2016) (dismissing state-law claims under *Herman* once the federal claim was dismissed for lack of subject matter jurisdiction); *ComUnity Collectors LLC v. Mortgage Elec. Registration Servs., Inc*., No. C-11-4777 EMC, 2012 WL 3249509, at *1 (N.D. Cal. Aug. 7, 2012) (same); *Lopez v. Lassen Dairy, Inc*., No. CV-F-08-121 LJO GSA, 2010 WL 4705521, at *2 (E.D. Cal. Nov. 12, 2010) (same). The Court thereby **DISMISSES** Plaintiff's state law claims – the fifth, seventh, eighth, and ninth causes of action – without prejudice so that they can be presented, as appropriate, to a state court with jurisdiction.

### E.    Collateral Estoppel

Defendants argue that Plaintiff's claims are barred by collateral estoppel. Since the claims have been dismissed on other grounds, it is unnecessary to analyze these claims under collateral estoppel principles.

### F.    Personal Jurisdiction as to Young

Defendant Young also raises a challenge based upon personal jurisdiction deficiencies. However, since the Court has dismissed all of the ERISA based claims against her, the Court finds this challenge is moot.

### G.    Sanctions

Young has requested the Court order sanctions under Rule 11 and under 28 U.S.C. § 1927 against Plaintiff and his attorneys, Mark Schechter and Paul Woodward of Butterfield Schechter LLP. ECF No. 58. An opposition was filed on October 4, 2019. ECF No. 60. A reply was filed on October 11, 2019. ECF No. 61.

Young alleges that the FAC is legally deficient and that Plaintiffs' attorneys did not perform a reasonable and competent inquiry before filing the FAC. ECF No. 58-1 at 12. Young additionally alleges that Plaintiff and his attorneys' decision to file this action

was to "unnecessarily increase the cost of litigation for Ms. Young so that she is forced to the settlement table."  ECF No. 58-1 at 17.

### 1.    Rule 11

Rule 11 of the Federal Rules of Civil Procedure ("Rule 11") imposes a duty on attorneys to certify that (1) they have read the pleadings or the motions they file, and (2) the pleading or motion is well-grounded in fact, has a colorable basis in law, and is not filed for an improper purpose. *Sec. Farms. v. Int'l Bhd. Of Teamsters*, 124 F.3d 999, 1016 (9th Cir. 1997) (citing Rule 11(b)).  Generally, sanctions are appropriately imposed on an attorney for a filing "if either a) the paper is filed for an improper purpose, or b) the paper is 'frivolous.' " *Townsend v. Holman Consulting Corp.*, 929 F.2d 1358, 1362 (9th Cir. 1990) (quoting *Zaldivar v. City of Los Angeles*, 780 F.2d 823, 832 (9th Cir. 1986)).

 However, as the Ninth Circuit has recognized, a special set of considerations pertain to Rule 11 motions directed at complaints.  Unlike other filings, complaints may be challenged only for "frivolousness," which the Ninth Circuit uses as a "shorthand ... to denote a filing that is both baseless and made without a reasonable and competent inquiry."  *Id.*  Unlike the "improper purpose" inquiry, "frivolousness" is not concerned with the motivations of the signing attorney, and "subjective evidence of the signer's purpose is to be disregarded" so long as the contested papers are not baseless.  *Id.*  According to the Ninth Circuit, complaints, which serve as the legal "vehicle through which [the plaintiff] enforces his substantive legal rights," should be preserved to the extent possible, since the successful vindication of "those rights benefits not only individual plaintiffs but may benefit the public." *Id.*

Frivolousness is determined objectively.  "[T]he subjective intent of the ... movant to file a meritorious document is of no moment.  The standard is reasonableness.  The 'reasonable [person]' against which conduct is tested is a competent attorney admitted to practice before the district court." *G.C. and K.B. Invest., Inc. v. Wilson*, 326 F.3d 1096, 1109 (9th Cir. 2003).  At base, "[t]he issue in determining whether to impose sanctions under Rule 11 is whether a reasonable attorney, having conducted an

objectively reasonable inquiry into the facts and law, would have concluded that the offending paper was well-founded." *Truesdell v. So. Cal. Permanente Med. Grp.*, 209 F.R.D. 169, 174 (C.D. Cal. 2002).

Cases warranting imposition of sanctions for frivolous actions are "rare and exceptional." *Operating Eng'rs Pension Trust v. A–C Co.*, 859 F.2d 1336, 1344 (9th Cir. 1988); *In re Keegan Mgmt. Co. Sec. Litig.*, 78 F.3d 431, 437 (9th Cir. 1996) (characterizing sanctions as "an extraordinary remedy, one to be exercised with extreme caution"). "District courts enjoy much discretion in determining whether and how much sanctions are appropriate." *Oliver v. In-N-Out Burgers*, 945 F. Supp. 2d 1126, 1130 (S.D. Cal. 2013) (citing *Haynes v. City & Cnty. of San Francisco*, 688 F.3d 984, 987 (9th Cir. 2012)). A district court's determination of whether to enter sanctions is reviewed for abuse of discretion. *Id.*

Here, Young bears the burden of demonstrating that the FAC includes sanctionable material. The FAC presented genuine questions of law and Plaintiff alleged significant stakes since the sum of Plaintiffs' funds transferred to Young totaled to over $3 million. FAC ¶ 57. Having discerned no sanctionable material during the course of its review of the FAC, the Court **DENIES** Young's Rule 11 motion.

### 2. 28 U.S.C. § 1927

Pursuant to 28 U.S.C. § 1927, "[a]ny attorney ... who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." "[S]ection 1927 sanctions must be supported by a finding of subjective bad faith," which "is present when an attorney knowingly or recklessly raises a *frivolous* argument, or argues a meritorious claim for the purpose of harassing an opponent." *In re Keegan Mgmt. Co., Sec. Lit.,* 78 F.3d 431, 436 (9th Cir.1996) (internal quotations omitted) (emphasis added).

The Ninth Circuit has found that while recklessness may be the standard under § 1927, "it is an insufficient basis for sanctions under a court's inherent power." *In re*

*Keegan Mgmt. Co., Sec. Litig.*, 78 F.3d 431, 436 (9th Cir. 1996). Instead, counsel's conduct must "constitute[ ] or [be] tantamount to bad faith." *Roadway Express, Inc. v. Piper,* 447 U.S. 752, 767, 100 S.Ct. 2455, 2465, 65 L.Ed.2d 488 (1980). In sanctioning counsel, "[c]ourts may not invoke [inherent] powers without a 'specific finding of bad faith.' " *Yagman v. Republic Ins.,* 987 F.2d 622, 628 (9th Cir.1993) (quoting *United States v. Stoneberger,* 805 F.2d 1391, 1393 (9th Cir.1986)); *accord Zambrano v. City of Tustin,* 885 F.2d 1473, 1478 (9th Cir.1989) ("To insure that restraint is properly exercised, we have routinely insisted upon a finding of bad faith before sanctions may be imposed under the court's inherent power."). "Bad faith is present when an attorney knowingly or recklessly raises a frivolous argument or argues a meritorious claim for the purpose of harassing an opponent." *Trulis v. Barton*, 107 F.3d 685, 694 (9th Cir. 1995).

Here, Young asserts that Plaintiff's failure to add facts in his amended complaint to address the issues raised in Young's original mooted motion to dismiss is proof of Plaintiff's attempt to multiply the proceedings. Young's filing of the amended complaint is insufficient to constitute bad faith given that the original motion to dismiss had not been ruled on. In *Stone Creek*, the Ninth Circuit affirmed the lower court's sanctions order since the plaintiff failed to drop withdraw its actual damages claim when the plaintiff knew that its actual damages claim was meritless, and plaintiff intended to pursue only the defendant's profits. *Stone Creek, Inc. v. Omnia Italian Design, Inc*., 875 F.3d 426, 443 (9th Cir. 2017), *cert. denied*, 138 S. Ct. 1984, 201 L. Ed. 2d 248 (2018). In the district court proceedings, the plaintiff opposed the defendant's motion to vacate the jury trial and caused additional expense and delay. *Stone Creek Inc. v. Omnia Italian Design Inc*., No. CV-13-00688-PHX-DLR, 2016 WL 492629, at *2 (D. Ariz. Feb. 9, 2016), *aff'd*, 862 F.3d 1131 (9th Cir. 2017), and *aff'd*, 875 F.3d 426 (9th Cir. 2017). As a result of the plaintiff's opposition, the defendant was "forced to expend time and resources defending against the claim by, for example, taking depositions and having its expert prepare a report." *Stone Creek*, 875 F.3d at 443.

Here, Plaintiff has not engaged in comparable behavior to support a finding of bad faith. The Court therefore **DENIES** Young's 28 U.S.C. § 1927 motion.[4]

## V.    MOTIONS TO SEAL

Young filed a motion to file documents under seal accompanying her motion to dismiss the FAC ("First Motion"), ECF No. 47, and filed a second motion to file documents under seal accompanying her motion for sanctions.  ECF No. 56 ("Second Motion").  Ligand also filed a motion to file documents under seal.  ECF No. 48.  No oppositions have been filed.

In her First Motion, Young seeks to file under seal Exhibits 1-11 and 15-20.  ECF No. 47.  To support her argument, Young cites the prior sealing order by the Texas state court which oversaw the case for which these documents were filed.  ECF No. 47.  The remaining exhibits that Young seeks to file (i.e., Exhibits 12-14) are documents filed in the San Diego superior court.  The Court has previously granted Young's motion to seal documents filed in Texas state court and San Diego superior court – the majority of which are identical to the Exhibits in the First Motion.  ECF. No. 42.  Given the prior sealing order by the Texas state court and for reasons similar to those stated in the Court's prior order granting motions to seal, the Court **GRANTS** Young's motion to file Exhibits 1-11 and 15-20 under seal.

In the Second Motion, Young seeks to file under seal Exhibits 1-18 and 24-27.  ECF No. 56.  Exhibits 1-18 are identical to sealed exhibits from the First Motion.  Exhibits 24-27 are also documents filed related to the Texas state court proceedings.  For the same reasons as articulated above, Young's motion to file Exhibits 1-18 and 24-27 under seal is **GRANTED.**  The remaining exhibits in her Second Motion (i.e., Exhibits 19-23) are comprised of proof of service of Young's sanctions motion, and four sets of

---

[4] Young filed a request for judicial notice accompanying her motion for sanctions seeking judicial notice of twenty-six documents.  Since Young's motion for sanctions has been denied in full, the request for judicial notice is rendered moot.

email correspondence between Plaintiff, Young's Texas counsel, and the Court coordinator.

Ligand seeks to seal limited redacted portions of the memorandum support of their motion to dismiss. ECF No. 48. As support for this, Ligand asserts that these excerpts refer to the Texas state court orders that Young has filed under seal in connection with her motion to dismiss. The Court has previously granted Ligand's motion to seal limited redacted portions in support of their motion to dismiss. ECF No. 42. For reasons similar to those stated in the Court's prior order granting Ligand's motion to seal, the Court **GRANTS** Ligand's motion to seal limited redacted portions of the memorandum in support of their motion to dismiss at the following page and line numbers: 1:7, 2:23-25, 3:2-18 and n.4, 4:1-5, 10:3-4, and 12:13-14.

Accordingly, Defendants' motions to seal are **GRANTED.**

## VI. Conclusion

Based on the above, the Court GRANTS the Defendants motions to dismiss the first, second, third, fourth and sixth causes of action with prejudice and without leave to amend. The remaining state law claims – the fifth, seventh, eighth, and ninth causes of action – are dismissed without prejudice so that they can be raised, as appropriate, in state court.

**IT IS SO ORDERED.**

Dated: December 5, 2019

Hon. Gonzalo P. Curiel
United States District Judge