UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRIAN LUNDSTROM,<br><br>                              Plaintiff,<br><br>v.<br><br>CARLA YOUNG, an individual;<br>LIGAND PHARMACEUTICALS, INC.;<br>LIGAND PHARMACEUTICALS, INC.<br>401(k) PLAN; and DOES 1 through 20,<br><br>                              Defendants. | Case No.:  18-cv-2856-GPC<br><br>**ORDER GRANTING IN PART AND<br>DENYING IN PART DEFENDANTS'<br>MOTIONS TO DISMISS;<br>GRANTING DEFENDANT<br>YOUNG'S MOTION TO SEAL**<br><br>**[ECF Nos. 97, 100, 112]** |

Before the Court are Defendant Carla Young's ("Young") Motion to Dismiss the Second Amended Complaint ("SAC"), (ECF No. 97), and Defendants Ligand Pharmaceuticals Inc.'s ("Ligand") and Ligand Pharmaceuticals, Inc. 401(k) Plan's (the "401(k) Plan") Motion to Dismiss the SAC, (ECF No. 100). Plaintiff Brian Lundstrom's ("Lundstrom") Oppositions were filed on July 13, 2022. ECF Nos. 106, 107. Young's Reply was filed August 5, 2022, (ECF No. 109), and Ligand's Reply was filed August 8, 2022, (ECF No. 110).

1    For the reasons that follow, the Court **GRANTS** Defendant Young's Motion to

2  Dismiss. The Court **GRANTS** in part and **DENIES** in part Defendant Ligand's Motion to

3  Dismiss. The Court **GRANTS** Defendant Young's Request for Judicial Notice and

4  Defendant Young's Motion to Seal.

5                                    **FACTUAL BACKGROUND**

6    Plaintiff and Defendant Young married on or around August 21, 1998 in Seattle,

7  Washington, and divorced on July 30, 2014 in Texas. ECF No. 92 ("SAC") ¶¶ 16, 18. A

8  Decree was signed on July 30, 2014 that divided all marital property. *Id.* ¶ 18. On January

9  8, 2016 Plaintiff began employment with Ligand and commenced participation in the

10 Ligand 401(k) Plan on or about April 1, 2016. *Id.* ¶¶ 19, 23. As part of Plaintiff's

11 compensation package, Ligand also granted Plaintiff 18,010 stock options in two lots

12 ("Incentive Stock Options"). *Id.* ¶ 26.

13   Plaintiff alleges that in late 2017, Young and law firm KoonsFuller[1]

14 "surreptitiously" prepared a document purported to be a qualified domestic relations

15 order ("QDRO") seeking 100 percent of the benefits in Plaintiff's 401(k) Plan account

16 (the "401(k) QDRO"). *Id.* ¶ 30. The Texas 231st court signed the 401(k) QDRO on or

17 about November 21, 2017. *Id.* ¶ 35. Plaintiff alleges he was not notified that the 401(k)

18 QDRO was submitted to the Texas 231st court and was not given an opportunity to

19 review, approve, or contest the validity of the 401(k) QDRO prior to the court's

20 signature. *Id.* ¶¶ 32-34.

21   Plaintiff alleges that, similar to the 401(k) QDRO, Young and KoonsFuller

22 "surreptitious[ly]" prepared a second document purporting to be a domestic relations

23 order ("DRO") seeking the transfer of 18,010 Incentive Stock Options granted to Plaintiff

---

[1] KoonsFuller was initially named as a Defendant in the SAC. ECF No. 92. KoonsFuller was dismissed as a Defendant on June 17, 2022. ECF No. 102.

2

under the Stock Incentive Plan ("Stock DRO"). *Id.* ¶ 39. The Texas 231st court signed the Stock DRO on or about January 22, 2018, and Plaintiff similarly alleges he was not notified this DRO was submitted to the court and as such was not given a chance to review, approve, or contest the validity of the Stock DRO. *Id.* ¶¶ 40-44. Plaintiff alleges the Stock DRO does not specify any amount of unpaid child or spousal support being satisfied through the Stock DRO. *Id.* ¶ 46.

In late 2017, Young sent Ligand a copy of the 401(k) QDRO. *Id.* ¶ 47. On January 4, 2018, Ligand's Head of HR forwarded a copy of the 401(k) QDRO to Plaintiff without a copy of Ligand's QDRO processing procedures. *Id.* ¶¶ 48, 49. Plaintiff alleges that to date he has yet to receive a copy of Ligand's QDRO processing procedures. *Id.* ¶ 49. After reviewing the 401(k) QDRO, Plaintiff raised a number of issues with Ligand: (1) the 401(k) QDRO states that it relates "to the provision of marital property rights for Alternate Payee," but it seeks to assign Plaintiff's post-marital property because Plaintiff began making contributions to the 401(k) Plan in January of 2016 after his divorce was finalized; (2) Plaintiff and Young's divorce settlement did not include post-divorce retirement assets with future employers; and (3) the 401(k) QDRO did not specify a fixed dollar amount that Plaintiff owed Young, which would be satisfied through the 401(k) QDRO. *Id.* ¶ 50. Plaintiff informed Ligand he filed an appeal on January 26, 2018 with the 2nd Court of Appeals in Fort Worth, Texas. *Id.* ¶ 52. The 2nd Court of Appeals denied Plaintiff's appeal on February 1, 2018. *Id.* ¶ 53. On February 8, 2018, Ligand created a Fidelity account for Young and transferred all investments from the 401(k) account into Young's account, approximately $62,063.47. *Id.* ¶ 54.

In early February 2018, Young sent Ligand a copy of the Stock DRO. *Id.* ¶ 58. On February 7, 2018, Ligand's Head of HR notified Plaintiff that Ligand had received the Stock DRO seeking to assign all of Plaintiff's Incentive Stock Options to Young. *Id.* ¶ 59. Plaintiff again raised a number of issues with Ligand regarding the Stock DRO and

18-cv-2856-GPC

1   notified Ligand he was appealing the Stock DRO with the 2nd Court of Appeals in Fort
2   Worth, Texas. *Id.* ¶¶ 60, 61.

3   On March 14, 2018, Ligand's Head of HR notified Plaintiff that if Ligand did not
4   receive a hold or other standing order issued by a presiding judge by March 23, 2018, the
5   company would distribute the Incentive Stock Options to Young on March 28, 2018. *Id.* ¶
6   62. That same day Plaintiff notified Ligand that he had filed appeals with the Texas
7   Supreme Court to invalidate both the 401(k) QDRO and the Stock DRO. *Id.* ¶ 64. On
8   May 8, 2018, while Plaintiff's appeal remained pending, Ligand informed Plaintiff that
9   the Incentive Stock Option assignment would be processed that day. *Id.* ¶ 65. Plaintiff
10  alleges that Ligand distributed his entire 401(k) account to Young as well as 18,010
11  Incentive Stock Options to Young with a present value in excess of $4 million. *Id.* ¶ 68.
12  The SAC filed on May 25, 2022 alleges the following causes of action:

13      First Cause of Action:    Violation of ERISA as to Defendant Ligand for
14      distributing the 401(k) in violation of the Plan
15      terms

16      Second Cause of Action:    Breach of fiduciary duty under ERISA as to
17      Defendant Ligand and Does 1-20 for failing to
18      determine whether the requirements for the
19      qualified status of a DRO are satisfied

20      Third Cause of Action:    Breach of fiduciary duty under ERISA as to
21      Defendant Ligand for ignoring information that
22      called into question the validity of the 401(k)
23      QDRO

24      Fourth Cause of Action:    Violation of ERISA as to Defendant Ligand for
25      failing to provide Plaintiff a copy of the 401(k)

26
27
28

|   |   |
|---|---|
|   | Plan's written policy to determine the qualified status of a DRO |
| Fifth Cause of Action: | Unjust enrichment supplemental state law claim as to Young |
| Sixth Cause of Action: | Conversion supplemental state law claim as to Young |
| Seventh Cause of Action: | Equitable and injunctive relief as to Young |
| Eighth Cause of Action: | Equitable and injunctive relief supplemental state law claim as to Young |
| Ninth Cause of Action: | Breach of contract as intended third-party beneficiary supplemental state law claim as to Young |
| Tenth Cause of Action: | Breach of common law fiduciary duty supplemental state law claim against Defendants Ligand and Does 1-20 |
| Eleventh Cause of Action: | Negligence supplemental state law claim against Defendants Ligand and Does 1-20 |
| Twelfth Cause of Action: | Interference with exercise of ERISA rights against Defendant Ligand |

## PROCEDURAL HISTORY

On June 19, 2019, Plaintiff filed his First Amended Complaint ("FAC"). ECF No. 45. Defendants Young and Ligand subsequently moved to dismiss the FAC, (ECF Nos. 46, 50), and the Court granted these Motions in full, (ECF No. 64). Plaintiff appealed to the Ninth Circuit. ECF No. 68. The Ninth Circuit affirmed the dismissal of claims 4 and 5 as barred by *Rooker-Feldman*, but reversed dismissal of claims 1, 2, 3, 6, 7, 8, and 9 and remanded to this Court to "consider any other defenses, including claim and issue

preclusion, in the first instance." *Lundstrom v. Young*, 857 Fed. Appx. 952, 956-57 (9th Cir. 2021). The Ninth Circuit also stated that "to the extent the district court alternatively dismissed Claim 3 on the merits, it erred by failing to address Lundstrom's claim that Ligand failed to comply with the procedural requirements in 29 U.S.C. § 1056(d)(3)(G)(i)." *Id.* at 955. Young's petition for writ of certiorari with the United States Supreme Court was denied on March 21, 2022. *Young v. Lundstrom*, 142 S. Ct. 1363 (2022). On May 25, 2022, Plaintiff filed this SAC, alleging twelve claims for relief against Young, Ligand, and KoonsFuller, PC. ECF No. 92. KoonsFuller was dismissed as a Defendant on June 17, 2022. ECF No. 103.

## REQUEST FOR JUDICIAL NOTICE

Defendant Young filed a request for judicial notice accompanying her Motion to Dismiss.  ECF No. 97-3 ("Young RJN"). Plaintiff does not oppose this request, except to say that this Court can take judicial notice of the existence of the Texas State Court Documents, (Young Exhibits 1-5, 8-20), but it should not take notice of the truth of the facts cited therein. ECF No. 107 at 6.

Young requests that the Court take judicial notice of the following twenty-one documents:

18-cv-2856-GPC

1. A true and correct copy of Tarrant County's 231st Judicial District's Court Order on September 13, 2017 which enters judgment for child support.

2. A true and correct copy of Tarrant County's 233rd Judicial District's Court Order on April 27, 2017 Regarding Capias Order.

3. A true and correct copy of Tarrant County's 233rd Judicial District's Court Order April 27, 2017 Regarding Commitment Order.

4. A true and correct copy of Tarrant County's 231st Judicial District's Court Order on April 5, 2017 Regarding Relief to Collect Outstanding Judgments.

5. A true and correct copy of Tarrant County's 233rd Judicial District's Court Order on March 4, 2015 Regarding Contempt Order.

6. A true and correct copy of Tarrant County's 231st Judicial District's Court Order on November 21, 2017 Regarding Qualified Domestic Relations Order.

7. A true and correct copy of Tarrant County's 231st Judicial District's Court Order on January 22, 2018 Regarding Domestic Relations Order.

8. A true and correct copy of February 1, 2018 Second District Court of Appeal Opinion.

9. A true and correct copy of February 26, 2018 Second District Court of Appeal Opinion.

10. A true and correct copy of June 8, 2018 Supreme Court of Texas Order.

11. A true and correct copy November 16, 2018 Supreme Court of Texas Order.

12. A true and correct copy of Plaintiff's August 8, 2018 Notice of Registration filed in San Diego Superior Court, Case No. 18FL009397C.

18-cv-2856-GPC

13. A true and correct copy of Ms. Young's declaration in support of opposition to Plaintiff's Ex Parte Application to Stay Earnings Withholdings Order, Case No. 18FL009397C, wherein Ms. Young objects to the exercise of jurisdiction by California courts.

14. A true and correct copy of San Diego Superior Court's January 8, 2019 Order denying Plaintiff's Ex Parte Application.

15. A true and correct copy Tarrant County's 231st Judicial District's Court Order on March 22, 2017 to Seal Court Records.

16. A true and correct copy Tarrant County's 233rd Judicial District's Court Order on December 3, 2013 Regarding Enforcement by Contempt.

17. A true and correct copy Tarrant County's 233rd Judicial District's Court Order on February 13, 2015 Revoking Suspension.

18. A true and correct copy Tarrant County's 233rd Judicial District's Court Order on February 17, 2016 Regarding Order for Capias.

19. A true and correct copy of Plaintiff's Writs of Mandamus to the Second Court of Appeals regarding the QDRO and DRO.

20. A true and correct copy of Plaintiff's Petitions for Review to the Supreme Court of Texas regarding the QDRO and DRO.

21. A true and correct copy of the Protective Order.

Twenty of the twenty-one documents Defendant Young seeks to judicially notice were previously judicially noticed in the Order dismissing the FAC. ECF No. 64 at 5. Thus, the Court will grant judicial notice of the first twenty documents on similar reasoning as stated in the Court's prior Order. The Court will also grant judicial notice of the additional twenty-first document: "A true and correct copy of the Protective Order." This document is relevant to Plaintiff's ninth cause of action, which alleges Defendant Young breached the terms of this Protective Order. SAC ¶ 170.

Thus, the Court **GRANTS** Defendant Young's request for judicial notice of the fact of the existence of the Texas State Court Documents, (Young Exhibits 1-5, 8-21), but **DENIES** any request for judicial notice of the contents of these documents. The Court **GRANTS** judicial notice of the existence of the 401(k) QDRO and Stock DRO, (Young Exhibits 6, 7) as well as the contents therein.

## LEGAL STANDARD

### I.   Federal Rule of Civil Procedure 12(b)(6)

Federal Rule of Civil Procedure ("Rule") 12(b)(6) permits dismissal for failure to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6). Rule 8(a)(2) states that a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A plaintiff is not required to provide "detailed factual allegations," but the plaintiff must plead sufficient facts that, if accepted as true, "raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007). A complaint will survive a motion to dismiss when it contains enough facts to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). A claim is plausible when the factual allegations permit "the court to draw the reasonable inference that the defendant is liable for the misconduct charged." *Iqbal*, 556 U.S. at 678. The Court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

## DISCUSSION

Defendant Young seeks dismissal of the SAC on the following grounds: (1) this Court lacks personal jurisdiction over her; (2) venue in the Southern District of California is improper; and (3) Plaintiff fails to state a claim because Plaintiff's ERISA claim as to Young is barred by both collateral estoppel and collateral attack, and the Court should not

18-cv-2856-GPC

exercise supplemental jurisdiction over the state law claims. ECF No. 97 at 1. Alternatively, Young seeks transfer of the entire matter to the Northern District of Texas. ECF No. 97 at 1.

Defendants Ligand and the 401(k) Plan seek dismissal on the following grounds: (1) the entire action is barred as an impermissible collateral attack on the Texas orders; (2) res judicata and issue preclusion bar Plaintiff's claims; (3) Plaintiff's fourth cause of action fails to plead causation and Plaintiff lacks standing to sue for a procedural violation of ERISA; (4) Plaintiff lacks standing to bring his second and third causes of action; (5) Plaintiff fails to plead a claim as to count one because the transfer to Young was not a "distribution" from Plaintiff's 401(k) account; (6) Plaintiff fails to state a claim as to counts ten and eleven; and (7) Plaintiff's retaliation claim is barred by the statute of limitations and lacks merit. ECF No. 100. Alternatively, Defendants join Young's motion to transfer the entire matter to the Northern District of Texas. ECF No. 100 at 23.

## I.    Timeliness

Plaintiff alleges that both Motions to Dismiss should be denied as untimely. ECF No. 107 at 7; ECF No. 106 at 7. Plaintiff filed his SAC on May 25, 2022. ECF No. 92. Under Rule 15, a response to an amended pleading is due within 14 days. Fed. R. Civ. P. 15. Thus, Plaintiff states the deadline for Defendants to file their Motions to Dismiss was June 8, 2022. Defendant Young filed a Motion to Dismiss on June 14, 2022, ECF No. 97, and Defendant Ligand filed a Motion to Dismiss on June 15, 2022, ECF No. 100.

The Ninth Circuit states that a negligent failure to respond is excusable if the party offers a credible, good faith explanation for the untimeliness that "negat[es] any intention to take advantage of the opposing party, interfere with judicial decisionmaking, or otherwise manipulate the legal process." *TCI Group Life Ins. Plan v. Knoebber*, 244 F.3d 691, 697 (9th Cir. 2001). Here, Defendants offer a good faith explanation that the alleged untimeliness was due to a stipulation among the Parties that responsive pleadings were

not due until 21 days after lifting the stay. ECF No. 109. The Court finds that this is a good faith explanation and that the untimeliness in no way interfered with the judicial process or took advantage of Plaintiff. Thus, the Court does not deny the Motions on this basis alone.

## II.   Transfer

At the outset, the Court denies transfer to the Northern District of Texas. 28 U.S.C. § 1404(a) governs a motion to transfer. Transfer is warranted if: (1) the action could have originally been brought in the transferee court; and (2) convenience of the parties and witnesses in the interest of justice favors transfer. *See Hatch v. Reliance Ins. Co.*, 758 F.2d 409, 414 (9th Cir. 1985). All Parties agree that this matter could have originally been brought in the Northern District of Texas, therefore the Court does not address this prong.

The second prong weighs multiple factors, including: (1) the convenience of the parties and witnesses; (2) the location where the relevant agreements were negotiated and executed; (3) the state that is most familiar with the governing law; (4) the plaintiff's forum choice; (5) the respective parties' contacts with the forum; (6) the contacts relating to the plaintiff's cause of action in the chosen forum; (7) the difference in litigation costs between the two forums; (8) the availability of the compulsory process to compel attendance of unwilling non-party witnesses; and (9) the ease of access to sources of proof. *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 598 (9th Cir. 2000). One factor is not dispositive, and a district court has broad discretion to decide motions for transfer on an individualized basis. *See Ctr. For Biological Diversity v. Kempthorne*, No. 08-1339, 2008 WL 4543043, at *2 (N.D. Cal. Oct. 10, 2008 (citing *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988)). For the following reasons, the Court finds transfer is not appropriate in this case.

18-cv-2856-GPC

1    As to the first factor, Defendant Ligand is located in this District, and Defendant

2    Young has not made a showing that it is inconvenient for her to litigate in this District.

3    The "increased speed and ease of travel and communication" means that no forum is "as

4    inconvenient today" as it previously may have been. *Gates Learjet Corp. v. Jensen*, 743

5    F.2d 1325, 1336 (9th Cir. 1984).

6    Plaintiff argues that the individual witnesses located in Texas that Defendant

7    Young identifies as key to Plaintiff's claims will not be deposed or called to testify in this

8    case. ECF No. 107 at 18. Plaintiff has dismissed his claim against law firm KoonsFuller,

9    and as a result, states that the testimony of KoonsFuller lawyers and employees is

10   irrelevant, or at the very least, they will claim attorney-client privilege, rendering their

11   testimony "useless for Plaintiff's claims." *Id.* Defendant Young responds that this is

12   "utter nonsense" because testimony of KoonsFuller employees will be necessary to

13   support Plaintiff's allegation of fraud and Young's defense. ECF No. 109 at 6. While the

14   Court agrees with Defendant Young that it is unclear how Plaintiff could prove his

15   allegations of "extrinsic fraud" absent the testimony of others involved in the alleged

16   fraud, there are still a number of witnesses located in this District for which litigation in

17   the Southern District would be convenient. For example, Ligand employees and

18   executives that will be called as witnesses reside in California. Although this factor is a

19   close call, the Court does not ultimately find that this factor weighs in favor of

20   transferring the entire matter to Texas.

21   The second factor—the location where the relevant agreements were negotiated

22   and executed—also weighs in favor of the Southern District of California. Defendant

23   Young argues that "the bulk of Plaintiff's ERISA claims arise from the Texas Court's

24   orders related to the QDRO and DRO." ECF No. 97 at 19. While it is true this litigation

25   would likely not exist *but for* the existence of the Texas orders, many of Plaintiff's claims

18-cv-2856-GPC

in the SAC arise out of how the orders were "processed, administered, and qualified" by Ligand in this District. ECF No. 107 at 19.

Familiarity with the governing law similarly weighs in favor of this District. Plaintiff states that six of the claims are under ERISA, and the remaining six causes of actions are under California state law, including unjust enrichment, conversion, equitable and injunctive relief, breach of contract as intended third-party beneficiary, breach of common law fiduciary duty, and negligence. ECF No. 107 at 20.

"[A] plaintiff's choice of forum is accorded great deference in ERISA cases." *Jacobson v. Hughes Aircraft Co.*, 105 F.3d 1288, 1302 (9th Cir. 1997). Defendant Young argues that Plaintiff's choice of forum should be minimized because he is not a resident of this District; this action has minimal connection with this District; and because Plaintiff is "willfully shirking his legal responsibilities in the State of Texas." ECF No. 97 at 25. While it is true Plaintiff is not a resident of this District, Plaintiff was a Ligand employee for many years, worked remotely from his home, and often traveled to Ligand in California prior to the end of his employment. ECF No. 107 at 16. Further, the Court finds this action is sufficiently connected to this District. Much of the alleged misconduct occurred in this district, including the alleged improper administration of the 401(k) Plan and the alleged ERISA procedural failures.

Factors five and six concern the parties' and the claims' contacts with this District. The Court agrees with Plaintiff that there are sufficient contacts with this District to make it an appropriate venue. Specifically, the following acts occurred in this District: (1) Ligand's failure to provide Plaintiff with its QDRO processing procedures; (2) Ligand's alleged violation of the 401(k) Plan terms when it distributed Plaintiff's 401(k) account to Defendant Young; and (3) Ligand's allegedly retaliatory actions against Plaintiff after exercise of his ERISA rights. ECF No. 107 at 20-21. The Court also finds that the cost of litigation is not substantially different between Texas and California.

18-cv-2856-GPC

The eighth factor—ability to compel unwilling non-party witnesses—weighs slightly in favor of transferring this matter to Texas. Plaintiff argues he has no intention of deposing KoonsFuller attorneys or any other Texas residents, and thus he "is unaware of any witnesses relevant to this action who could not be compelled to appear in the Southern District of California." ECF No. 107 at 22-23. As stated above, the Court agrees with Defendant Young that the testimony of KoonsFuller attorneys and other Texas residents will likely be necessary to establish a number of Plaintiff's claims and Young's defenses if they go forward. However, this factor must be balanced against the ones already discussed, and the Court finds this factor alone does not warrant transfer to Texas. One factor is not dispositive.

Lastly, "ease of access to sources of proof," is less weighty of a factor in the age of modern of technology. *See Getz v. Boeing Co.*, 547 F. Supp. 2d 1080, 1084 (N.D. Cal Mar. 31, 2008). Electronic evidence can be reproduced anywhere with relative ease. *Id.* Defendant Young has not demonstrated that there is a burdensome amount of physical evidence that would need to be reproduced and relocated to this District for litigation. Ultimately, the Court finds this matter is appropriately located in the Southern District of California and declines the request to transfer.

### III.   Collateral Estoppel / Res Judicata

Both Defendants argue that Plaintiff's claims are barred by res judicata and collateral estoppel. ECF No. 100 at 11; ECF No. 97 at 33. Specifically, Defendants argue that underlying each of Plaintiff's claims is the validity of the 401(k) QDRO and Stock DRO, and that the Texas courts have already decided these documents are valid. To determine the preclusive effect of a state court judgment, federal courts must look to the state's preclusion law. *Palomar Mobilehome Park Ass'n v. City of San Marcos*, 989 F.2d 362, 364 (9th Cir. 1993).

/

### A. Res Judicata

Res judicata, or claim preclusion, under Texas law, bars the litigation of claims that were litigated or should have been litigated in an earlier suit. *Hammervold v. Blank*, 3 F.4th 803, 808 (5th Cir. 2021). Under Texas law, "a judgment in an earlier suit precludes a second action by the parties and their privies not only on matters actually litigated, but also on causes of action or defenses which arise out of the same subject matter and which might have been litigated in the first suit." *Getty Oil Co. v. Ins. Co. of N. Am.*, 845 S.W.2d 794, 798 (Tex. 1992). Claim preclusion requires proof of: (1) a prior final judgment on the merits by a court of competent jurisdiction; (2) the identical identity of parties or those in privity with them; and (3) the second action is based on the same claims as were raised or could have been raised in the first action. *Amstadt v. U.S. Brass Corp.*, 919 S.W.2d 644, 652 (Tex. 1996). To determine if the third element is satisfied, the court should apply the "transactional test, which requires that the two actions be based on the same nucleus of operative facts." *Stanford v. Kelley*, No. 4:21-cv-388, 2022 WL 670929, at *5 (E.D. Tex. Feb. 12, 2022). If these three requirements are met, "res judicata prohibits either party from raising any claim or defense in the later action that was or could have been raised in support of or in opposition to the cause of action asserted in the prior action." *Id.* (quoting *Trevino v. Bank of N.Y. Mellon*, No. 1:19-cv-158, 2020 WL 826641, at *3 (S.D. Tex. Jan. 29, 2020)).

Defendant Ligand is unable to assert the defense of res judicata. Ligand fails, at a minimum, the second prong of the above test. Ligand was not a party in any of the Texas proceedings and is not in privity with any party that was.

As to Defendant Young, Plaintiff's fifth, sixth, seventh, and eighth are barred by collateral estoppel. This is discussed below and as such is not analyzed under res judicata. Plaintiff's ninth cause of action is not barred by any preclusion doctrine.

**B. Collateral Estoppel**

Under Texas law, collateral estoppel requires finding that: "'(1) the facts sought to be litigated in the second action were fully and fairly litigated in the prior action; (2) those facts were essential to the judgment in the first action; and (3) the parties were cast as adversaries in the first action.'" *Hammervold*, 3 F.4th at 810 (quoting *In re Schwager*, 121 F.3d 177, 181 (5th Cir. 1997)). "The issue in the first action [must] be identical to the issue in the pending action." *Getty*, 845 S.W.2d at 802. An issue is identical when "both the facts and 'legal standard used to assess them'" are identical. *Hammervold*, 3 F.4th at 810 (quoting *Brister v. A.W.I., Inc.*, 946 F.2d 350, 354 n.1 (5th Cir. 1991)). If a party is collaterally estopped from proving a necessary element of their claim because the identical issue was decided in previous litigation, the entire claim can be dismissed. *Id.* at 810.

Here, both Defendants easily meet the third prong. Plaintiff and Defendant Young were direct adversaries in the previous litigation in Texas. As to Defendant Ligand, the adversarial element only requires that "'the party against whom the doctrine is asserted was a party or in privity with a party in the first action.'" *State Farm Fire and Cas. Co. v. Fullerton*, 118 F.3d 374, 377 (5th Cir. 1997) (quoting *Sysco Food Services, Inc. v. Trapnell*, 890 S.W.2d 796, 801 (Tex. 1994)). Plaintiff was a party in the prior actions.

### 1. Facts to be litigated were fully and fairly litigated

To be barred by collateral estoppel, the issues must have been "fully and fairly" litigated in the prior state court actions and essential to the judgment. Specifically, the issues relevant in the present action are whether the 401(k) QDRO and Stock DRO suffered from various substantive and procedural defects, including that the orders constitute an improper division of post-marital assets; that the orders lack specificity because they do not establish a specific amount of child or spousal support intended to be

18-cv-2856-GPC

satisfied through the orders; and that Plaintiff was not given notice that the orders had been submitted to the Texas court for signature. *See* SAC ¶¶ 24, 46, 32-33.

Plaintiff was not present in court to contest the validity of the orders at an in-person hearing. *See* SAC at 7-9; ECF No. 97 at 2-3. Still, the Fifth Circuit in *State Farm Fire and Casualty Co. v. Fullerton*, 118 F.3d 374 (5th Cir. 1997), surveyed Texas law to determine that "full and fair" litigation does not require "an active courtroom confrontation." *Fullerton*, 118 F.3d at 382 (5th Cir. 1997). In *Fullerton*, the Fifth Circuit looked to a case in which the defendant did not serve an answer and a default judgment was brought against the defendant. *Id.* A later court found that issues essential to the default judgment in the first action had preclusive effect in later actions. *Id.* at 382-83. Thus, although Plaintiff Lundstrom did not make an appearance in court, Texas state preclusion law allows and requires this Court to find that the judgments rendered against him were "fully and fairly litigated."

In addition, although Plaintiff was not present when the orders were signed, Plaintiff has completely exhausted his arguments in the Texas appellate courts that the orders, among other things: (1) are an improper division of post-marital assets and grant Ms. Young assets she is not entitled to; (2) suffer from a lack of due process; and (3) lack specificity. The Texas Supreme Court and Second District Court of Appeals have repeatedly denied Plaintiff's request to rescind these orders because of the alleged deficiencies. *See* ECF No. 97 at 4-5; *see also* Young Exhibits 19 (Petition for Writ of Mandamus to the Texas Second District Court of Appeals); 8 (denial of Plaintiff's first Writ of Mandamus); 19 (Second Amended Petition for Writ of Mandamus to the Texas Second District Court of Appeals); 9 (denial of Plaintiff's Second Amended Writ); 20 (Plaintiff's Petition for Review to the Texas Supreme Court); 10 (Texas Supreme Court's denial of Plaintiff's petition); 11 (Texas Supreme Court's denial of Plaintiff's motion for rehearing). Thus, these issues are subject to collateral estoppel, and the Court is barred

17

from entertaining or finding that the 401(k) QDRO and Stock DRO are invalid because Plaintiff was denied due process or Defendant Young is not entitled to the assets.

The Court now turns to which causes of action must be dismissed because the arguments Plaintiff raised in state court are a "necessary element of [the] claim" he now raises in federal court. *Hammervold*, 3 F.4th at 810.

### a. Claims Against Defendant Young

The fifth, sixth, seventh, and eighth causes of action are against Defendant Young and claim, at their core, that she is in wrongful possession of Plaintiff's assets for reasons including that the orders are an improper division of post-marital assets and that Plaintiff lacked notice and therefore due process as to the signing of the orders. However, these arguments have already been presented to and rejected by Texas state courts. The fifth, sixth, seventh, and eighth causes of action attempt to revisit and overturn the Texas court rulings. Collateral estoppel bars Plaintiff from doing so.

The fifth cause of action for unjust enrichment states that "Plaintiff did not owe Ms. Young the multi-million dollar amounts she received. . . . In addition, the [divorce] Decree does not provide Ms. Young with any rights to Plaintiff's separate post-marital assets or vice versa. As such, Ms. Young is not entitled to retain [these assets, and] it would be unjust for Ms. Young to retain [these assets]." SAC ¶¶ 128-130.

The sixth cause of action alleges that "[t]hrough improper means by extrinsic fraud in terms of securing [the Texas court's] signatures without satisfying the due process requirements of the 5th and 14th Amendments, Ms. Young . . . wrongfully and intentionally converted Plaintiff's 18,010 Incentive Stock Options." SAC ¶ 136.

The seventh cause of action alleges that "Ms. Young was not entitled to receive any of Plaintiff's separate post-marital assets from the 401(k) Plan distributed to her. Ms. Young is wrongfully holding benefits to which Plaintiff is entitled." SAC ¶¶ 149-50.

And, the eighth cause of action states that "Ms. Young had no legal entitlement to receive any of Plaintiff's post-marital assets from the Stock Incentive Plan under the contractually binding Decree or otherwise. Ms. Young is wrongfully holding assets to which Plaintiff is entitled." SAC ¶¶ 157, 58.

All of these claims and arguments were considered and uniformly rejected by the Texas state courts and now must be barred by issue preclusion in this court. Thus, these four claims against Defendant Young are **DISMISSED**.[2]

### b.  Claims Against Defendant Ligand

Although Defendant Ligand argues that the central issue of all the claims in Plaintiff's SAC is the validity of the Texas state orders and that this was fully litigated in the Texas court system and is now subject to preclusive effect, the Court disagrees. Not all of Plaintiff's claims against Ligand rely on the validity of the 401(k) QDRO and Stock DRO. Plaintiff's first cause of action alleges that Ligand distributed the benefits in Plaintiff's 401(k) account in violation of the Plan's terms. SAC ¶ 75. The fourth cause of actions relates to the procedures Ligand must have in place for determining the status of a QDRO and whether and how those procedures are communicated to employees. SAC ¶ 118. The twelfth cause of action alleges that Plaintiff's employment was terminated in retaliation for exercising his rights under the 401(k) Plan and ERISA. SAC ¶ 195. These allegations are separate and distinct from the question of the validity or invalidity of the 401(k) QDRO and Stock DRO. Put differently, Plaintiff's success on these causes of

---

[2] The claims against Defendant Young are distinct from the question of whether Ligand followed the *Kennedy* checklist, and thus whether the 401(k) QDRO was properly qualified under ERISA. The argument Ligand improperly qualified the orders does not mean that Ms. Young is in *wrongful* possession of the assets, or that she was not legally entitled to the assets under Texas law.

action does not necessarily depend on the arguments he has already raised in Texas state court.

However, Plaintiff's second, third, tenth, and eleventh causes of action against Defendant Ligand are barred by collateral estoppel and must be dismissed. The second cause of action alleges that Ligand, as plan administrator, improperly qualified the 401(k) QDRO because: "(1) it purported to relate to the provision of marital property rights for Alternate Payee; (2) Ms. Young had no marital property right to Plaintiff's 401(k) investments acquired post-marriage and with full knowledge of the terms of the Decree was a fraudulent attempt to obtain the entirety of Plaintiff's 401(k) account without regard to its value; and (3) the 401(k) QDRO itself failed to state a specific sum due." SAC ¶ 94. These arguments were presented in prior litigation in Texas state court (ECF No. 104 at 204, 210) and rejected. *Id*. at 99.

The third cause of action alleges Ligand breached its fiduciary duty when it "ignored the evidence it received from Plaintiff calling into question the propriety of the purpose of the 401(k) QDRO and distributed Plaintiff's entire 401(k) account to Ms. Young." SAC ¶ 110. Plaintiff reiterates the three issues he has with the 401(k) QDRO, stated above. ¶ 107. Again, these arguments were presented to Texas courts and rejected.

Plaintiff's tenth cause of action states that Ligand breached its fiduciary duty when it "wrongfully transferred" Plaintiff's Incentive Stock Options to Defendant Young.[3] SAC ¶ 180. To show that the transfer was "wrongful," Plaintiff must show that the underlying Stock DRO was invalid. The validity of the Stock DRO has been fully and fairly litigated in Texas state court.

---

[3] ERISA does not apply to the Stock DRO because the Incentive Stock Options were not intended to be retirement income or benefits. *See Oatway v. American Intern. Group, Inc.*, 325 F.3d 184, 188 (3rd Cir. 2003).

18-cv-2856-GPC

Last, Plaintiff's eleventh cause of action alleges Ligand was negligent because they "breached their duty to exercise reasonable care by transferring Plaintiff's Incentive Stock Options to Ms. Young despite the fact that Ms. Young had no entitlement under the court-ordered Decree to the Incentive Stock Options." SAC ¶ 187. Plaintiff argues "[a] reasonably prudent person" would have conducted an "independent inquiry" and "proper investigation" into the validity of the Stock DRO when confronted with information questioning its validity. SAC ¶ 189. To the extent that Plaintiff's claim is that Ligand did not exercise reasonable care because Ms. Young was not *entitled* to the Incentive Stock Options, (SAC ¶¶ 187, 88), this claim must fail because Texas courts firmly established that Ms. Young is entitled to these assets when they rejected Plaintiff's numerous appeals. Plaintiff's negligence claim necessarily relies on the validity of the Stock DRO, an issue that is given preclusive effect in this Court.

In conclusion, Plaintiff's second, third, fifth, sixth, seventh, eighth, tenth, and eleventh causes of action necessarily rely on arguments concerning the validity of the 401(k) QDRO and the Stock DRO that were raised in and rejected by Texas state courts. Thus, claims two, three, five, six, seven, eight, ten, and eleven are barred by collateral estoppel and must be **DISMISSED**.

## IV.    Collateral Attack

Collateral attack "precludes litigants from collaterally attacking the judgments of other courts." *Rein v. Providian Fin. Corp.*, 270 F.3d 895, 902 (9th Cir. 2001) (citing *Celotex Corp. v. Edwards*, 514 U.S. 300, 313 (1995)). Collateral attack is different from collateral estoppel or res judicata. *See Trahan v. Superior Oil Co.*, 700 F.2d 1004, 1019 (5th Cir. 1983). "'It is for the court of first instance to determine the question of the validity of the law, and until its decision is reversed for error by orderly review, either by itself or by a higher court, its orders based on its decision are to be respected.'" *Walker v. Birmingham*, 388 U.S. 307, 314 (1967) (quoting *Howat v. Kansas*, 258 U.S. 181, 189–

190 (1922)). Collateral attack bars consideration of a claim when a court must "re-examine and decide a question which has been finally determined." *City of Tacoma v. Taxpayers of Tacoma*, 357 U.S. 320, 334 (1958). The prior judgment must actually address the specific issue and decide that issue for the collateral attack doctrine to apply. *See Rein*, 270 F.3d at 902 (finding the collateral attack doctrine does not apply because the claims were not addressed by a prior order or judgment).

Collateral attack will apply when a Plaintiff can prevail on their later claims "*only* by proving that the [prior decision] was improper." *Gilbert v. Ben-Asher*, 900 F.2d 1407, 1411 (9th Cir. 1990) (finding the current lawsuit was a "collateral attack on the administrative decision revoking the license under the guise of a complaint sounding in tort"). A court must ask if the "pivotal issue has already been litigated and decided against [the Plaintiff]." *Id.*

Both Defendant Ligand and Defendant Young argue that Plaintiff's claims and the entire SAC are barred by the collateral attack doctrine. Given that the Court has applied collateral estoppel to dismiss the fifth, sixth, seventh and eight claims against Defendant Young and the second and eleventh claims against Defendant Ligand, the Court will only consider Defendant Ligand's collateral attack argument here as to the surviving claims against it. Ligand states that this litigation is an improper attack on the Texas state court judgments because "at the core" of Plaintiff's claims is the "contention that the 401(k) QDRO and Stock DRO were invalid." ECF No. 100 at 6-7. As to Defendant Ligand, Plaintiff responds that the first, second, third, and fourth causes of action "do not expressly seek to invalidate the 401(k) QDRO and were not litigated, let alone appealed in the Texas court." ECF No. 106 at 7. He argues that the twelfth cause of action for retaliation under ERISA did not exist at the time of the Texas proceedings and as such could not have been litigated. ECF No. 106 at 7.

18-cv-2856-GPC

Here, none of the surviving SAC claims expressly ask this Court to declare the 401(k) QDRO and Stock DRO invalid. As such, the Court declines to find any of the surviving claims in the SAC against Defendant Ligand are barred by the collateral attack doctrine.

## V.   *Kennedy* and Ligand's Fiduciary Duty Under ERISA

Although Plaintiff's second and third causes of action are dismissed as barred by collateral estoppel, these causes of action can alternatively be dismissed under *Kennedy v. Plan Administrator for DuPont Savings and Investment Plan*, 555 U.S. 285 (2009). ERISA does not require, or even permit, plan administrators to perform a detailed investigation of the underlying merits of a QDRO. *See Blue v. UAL Corp.*, 160 F.3d 383, 385 (7th Cir. 1998). In *Kennedy*, the Supreme Court stated that "a plan administrator who enforces a QDRO must be said to enforce plan documents, not ignore them. . . . [A] QDRO enquiry is relatively discrete, given the specific and objective criteria for a domestic relations order that qualifies as a QDRO, . . . [the requirements] amount to a statutory checklist working to 'spare [an administrator] from litigation-fomenting ambiguities.'" *Kennedy v. Plan Adm'r for DuPont Sav. & Inv. Plan*, 555 U.S. 285, 301-02 (2009) (quoting *Metropolitan Life Ins. Co. v. Wheaton*, 42 F.3d 1080, 1084 (7th Cir. 1994)). A plan administrator is not required to determine questions of law or resolve factual disputes. *Id.* "[U]nder ERISA, the pension plan must pay the bearer of a DRO if it determines that the order is a proper QDRO, *without further inquiry*; compliance with a QDRO is obligatory.'" *Trs. of the Dirs. Guild of America-Producer Pension Benefits Plans v. Tise*, 234 F.3d 415, 424 (9th Cir. 2000) (citing 29 U.S.C. § 1056(d)(3)(A) ("Each pension plan shall provide for the payment of benefits in accordance with the applicable requirements of any qualified domestic relations order.")).

*Kennedy* cites to 29 U.S.C. § 1056(d)(3)(C) and (D) as the "statutory checklist" plan administrators must follow. *Kennedy*, 555 U.S. at 302. Specifically, ERISA requires

the following to qualify a DRO: (1) the name and mailing address of the participant and alternate payee; (2) the amount or percentage of participant's benefits to be paid to each alternate payee; (3) the number of payments or period to which such order applies; (4) each plan to which the order applies; (5) the DRO must not require the plan to provide for a benefit not otherwise provided under the plan; (6) the DRO must not require the plan to provide increased benefits; and (7) the DRO must not require the payment of benefits to an alternate payee which are required to be paid to another alternate payee under a prior QDRO. 29 U.S.C. § 1056(d)(3)(C), (D). Thus, when a QDRO meets these statutory criteria, a plan administrator must comply with the QDRO without further inquiry into whether the QDRO complies with state laws or suffers from any other defect. *See Gray v. I.B.E.W. Local 332 Pension Tr.*, No. C09-3782 HRL, 2010 WL 3893590, at *3 (N.D. Cal. Sept. 30, 2010), *aff'd*, 495 F. App'x 831 (9th Cir. 2012).

The Court previously found that Ligand sufficiently demonstrated it satisfied the statutory requirements. *See* ECF No. 100 at 13; ECF No. 64 at 22; ECF No. 49 at 30-31. The Court again finds that the 401(k) QDRO meets this checklist. The 401(k) QDRO states the names and mailing addresses of Plaintiff and Defendant Young; it states that 100% of the benefits should be paid to Young; and it states that the Order applies to Plaintiff's 401(k) Plan. At the hearing, Plaintiff argued that the third prong was not satisfied—the 401(k) QDRO did not specify "the number of payments or period to which such order applies."

The Court disagrees and finds that the 401(k) QDRO does meet this requirement. The 401(k) QDRO clearly states that "Alternate Payee shall be paid Alternate Payee's benefits as soon as administratively feasible following the date this Order is approved as a Qualified Domestic Relations Order by the Plan Administrator and at the earliest date permitted under the terms of the Plan." Young Exhibit 6. Courts have found that similar language meets the 29 U.S.C. § 1056(d)(3)(C)(iii) requirement. *See e.g.*, *In re Williams*,

18-cv-2856-GPC

50 F. Supp. 2d 951, 960 (C.D. Cal. 1999) (finding the requirement met when the order stated that the assets should be paid out "at the earliest possible time"); *Stott v. Bunge Corp.*, 800 F. Sup. 567, 575 (E.D. Tenn. 1992) (finding the requirement met when payments were to be made "as soon as administratively possible"); *Hawkins v. C.I.R.*, 86 F.3d 982, 993 (10th Cir. 1996) (finding the requirement met when a cash payment was to be made "immediately"). The Order also states that "Alternate Payee may elect to receive Alternate Payee's benefits in any one of the allowable benefit distribution options permitted under the terms and provisions of the Plan." Young Exhibit 6. Thus, is it clear that the 401(k) QDRO provides that distribution must be made as soon as administratively feasible and in a manner in accordance with the Plan. This satisfies 29 U.S.C. § 1056(d)(3)(C)(iii).

At the hearing, Plaintiff also argued the fifth requirement—the DRO must not require the plan to provide for a benefit not otherwise provided under the plan—was not met. Plaintiff argued that because Ligand transferred Plaintiff's 401(k) to Defendant Young before he reached 59 ½ years of age, the 401(k) QDRO allowed a benefit that violated the terms of the Plan. Whether or not Ligand's actions to transfer Plaintiff's assets to a Fidelity account for Defendant Young constituted a "distribution" and thus violated the terms of the Plan is discussed below. However, what is relevant here is that the 401(k) QDRO itself did not provide for a benefit not otherwise provided under the Plan. The 401(k) QDRO clearly states that the benefits should be paid "at the earliest date *permitted under the terms of the Plan*." Young Exhibit 6 (emphasis added). The QDRO also had a Savings Clause, stating that the "Order is not intended, and shall not be construed in such a manner as to require the Plan to provide any type or form of benefit or any option not otherwise provided under the Plan." *Id.* The 401(k) QDRO thus does not contemplate any benefit in violation of the Plan; it contemplates the exact opposite. Whether the Plan Administrators themselves violated the Plan is a separate question. The

401(k) QDRO meets the *Kennedy* checklist, and the Plan Administrator was correct to find the 401(k) QDRO valid. Thus, Plaintiff's second cause of action that Ligand improperly approved the 401(k) QDRO because it "failed to meet the statutory requirements of a QDRO" must be dismissed.

Further, in his Second Amended Complaint, Plaintiff argues that Ligand should have taken additional steps to investigate the validity of the 401(k) QDRO and alleges Ligand breached its fiduciary duty because "it ignored the evidence it received from Plaintiff calling [the order] into question." SAC ¶ 110. As stated, Ligand was not statutorily required, or even authorized, to conduct significant legal and factual investigation. However, Plaintiff argues that DOL Advisory Opinion 1999-13A requires a plan administrator to, upon receipt of information calling into question the validity of a DRO, contact a state court or agency to inform them of the order's "suspicious nature," and that Ligand failed to do this. ECF No. 106 at 11.

As discussed in this Court's Order dismissing the First Amended Complaint, DOL Advisory Opinion 1999-13A stands for the proposition that a plan administrator's appropriate course of action when faced with evidence calling into question the validity of a QDRO depends on the facts of the case. ECF No. 64 at 23. The QDROs in the Advisory Opinion had many conspicuous irregularities—many came from the same lawyer and listed the alternate payees and participants as having the same address. *Id.* Still, the DOL was careful to say that "the administrator may not independently determine that the order is not valid under State law and therefore is not a 'domestic relations order.'" DOL Advisory Opinion 1999-13A.

Here, on its face, there was no indication that the QDRO was a sham like the Orders in DOL Advisory Opinion 1999-13A. Plaintiff appealed his concerns to the appropriate appellate court; Ligand waited until the court had rejected his claims; and then Ligand processed the 401(k) QDRO. Thus, Plaintiff has failed to state a claim that

Ligand breached its fiduciary duty in the manner it processed the 401(k) QDRO. The 401(k) QDRO satisfies the statutory checklist, the 401(k) QDRO contains no conspicuous irregularities as in DOL Advisory Opinion 1999-13A, and no additional investigation on behalf of the Plan Administrator was required. Thus, Plaintiff's third cause of action must be dismissed.

## VI.   Remaining Causes of Actions

### A. First Cause of Action

Plaintiff's first cause of action alleges Ligand breached its fiduciary duty under Section 404(a)(1)(D) of ERISA when it distributed Plaintiff's 401(k) to Defendant Young in violation of the Plan terms, specifically the distribution occurred before Plaintiff, the plan participant, reached the age of 59½ (Plaintiff was 55). SAC ¶¶ 75-77. The Court first must determine whether Ligand's transfer of Plaintiff's 401(k) assets to a Fidelity Account for Defendant Young constitutes a "distribution."

Ligand argues that the first cause of action must be dismissed because "the transfer of funds to a Fidelity account in Young's name pursuant to the QDRO was not a 'distribution.'" ECF No. 100-1 at 28. And, "the transfer was made pursuant to a QDRO and was not a distribution." *Id.* Ligand cites no legal authority to support this proposition. Plaintiff responds that "the transfer of funds to a Fidelity account in Young's name pursuant to the 401(k) QDRO does undeniably constitute a 'distribution' from Plaintiff's 401(k) account because the assets were irreversibly removed from Plaintiff's 401(k) account and the distribution to Young did not in any way restrict Young as to when she could or could not access the 401(k) assets." ECF No. 106 at 24. Plaintiff also does not provide case law supporting his proposition. Nevertheless, the Court finds that Ligand's transfer to a Fidelity account constitutes a "distribution." The natural understanding of "distribution" would encompass the situation here—assets were removed from Plaintiff's 401(k) account and placed in a Fidelity account that "did not in any way restrict Young as

18-cv-2856-GPC

to when she could or could not access the 401(k) assets." *Id.* The Court has not been provided with, and is unable to find, case law supporting an opposite conclusion.

Thus, the question is whether Plaintiff states a claim that Ligand's distribution of Plaintiff's 401(k) account violates the Plan's terms. Ligand argues that as long as there is a valid QDRO as defined by ERISA in 29 U.S.C. § 1056(d)(3), Ms. Young "may receive the fund awarded to her by the court's decree 'as if the participant [the husband] had retired on the date on which such payment is to begin under such order.'" *Custer v. Custer*, 776 S.W.2d 92, 95 (Ten. App. 1988) (quoting 29 U.S.C. § 1056(d)(3)(E)(i)(II)). Thus, Ligand was not in breach when it distributed the funds prior to Plaintiff reaching age 59 ½.

Although there is a dearth of case law on this point, the Court disagrees with Defendant Ligand and finds the reasoning set forth in *Dickerson v. Dickerson*, 803 F. Supp. 127 (E.D. Tenn. 1992), persuasive. In *Dickerson*, the court disagreed with the holding in *Custer v. Custer*, 776 S.W.2d 92 (Ten. App. 1988), cited by Ligand above, and found that it would violate the intent of Congress in enacting ERISA if QDROs allowed "sudden, unanticipated and immediate withdrawals from pension funds . . . many years prior to their normal retirement dates." *Dickerson v. Dickerson*, 803 F. Supp. 127, 133 (E.D. Tenn. 1992). The *Dickerson* Court reasoned that the § 1056(d)(3)(E)(i)[4] exception to §

---

[4] 29 U.S.C. § 1056(d)(3)(E)(i) reads:

**(E)(i)** A domestic relations order shall not be treated as failing to meet the requirements of clause (i) of subparagraph (D) solely because such order requires that payment of benefits be made to an alternate payee--

> **(I)** in the case of any payment before a participant has separated from service, on or after the date on which the participant attains (or would have attained) the earliest retirement age,
> **(II)** as if the participant had retired on the date on which such payment is to begin under such order (but taking into account only the present value of

1056(d)(3)(D)(i)[5] only applies if the Plan Participant had already "reached the age where he is eligible to receive retirement benefits under the terms of the pension plan, but he [had] not actually retired or terminated his employment." *Id.* at 133-34 (citing legislative history). § 1056(d)(3)(E)(ii) defines the "earliest retirement age" as either: "(1) the date on which the participant is entitled to a distribution under the plan; or (2) the later of the date of the participant attains age 50 or the earliest date on which the participant could begin receiving benefits under the plan if the participant separated from service." 29 U.S.C. § 1056(d)(3)(E)(ii).

Here, Plaintiff states he was not eligible to receive his retirement benefits until age 59 ½. Defendant Ligand did not provide an alternative interpretation of Plan terms that would permit a distribution prior to age 59 ½. Plaintiff's 401(k) fund was distributed to Defendant Young when Plaintiff was only 55 years of age and still a Ligand employee. Thus, Plaintiff has stated a claim that Ligand made a "premature distribution" to Defendant Young and that he has been harmed because the 401(k) assets are no longer in his account. SAC ¶¶ 78-79.

---

benefits actually accrued and not taking into account the present value of any employer subsidy for early retirement), and
**(III)** in any form in which such benefits may be paid under the plan to the participant (other than in the form of a joint and survivor annuity with respect to the alternate payee and his or her subsequent spouse).

[5] 29 U.S.C. § 1056(d)(3)(D)(i) reads:
**(D)** A domestic relations order meets the requirements of this subparagraph only if such order--
**(i)** does not require a plan to provide any type or form of benefit, or any option, not otherwise provided under the plan . . .

18-cv-2856-GPC

**B. Fourth Cause of Action**

Plaintiff's fourth cause of action alleges Ligand violated § 1056(d)(3)(G)(i) of ERISA in three ways: (1) Ligand failed to promptly provide Plaintiff a copy of the 401(k) Plan's policy for determining the qualified status of a DRO after receipt of the 401(k) QDRO; (2) the 401(k) Plan did not have a written policy in place for determining the qualified status of a DRO; and (3) Ligand failed to send Plaintiff a written communication advising him that the 401(k) QDRO satisfied the QDRO requirements under the 401(k) Plan and the Internal Revenue Code. SAC ¶ 118.

Defendant Ligand argues this claim must be dismissed because Plaintiff has not pled causation, and Plaintiff has not suffered a concrete injury-in-fact. ECF No. 100 at 15-17. Ligand argues Article III does not grant standing for "bare procedural violations." *Id.* The Court disagrees.

**1. Standing**

To establish standing under ERISA, an individual must show both that they have standing under the statute and that they meet Article III standing requirements. *Wells v. California Physicians' Serv.*, No. C05-01229 CRB, 2007 WL 926490, at *3 (N.D. Cal. Mar. 26, 2007). To have standing under ERISA, a Plaintiff must show that they are a plan participant. *Poore v. Simpson Paper Co.*, 566 F.3d 922, 925 (9th Cir. 2009). A plan participant is "any employee or former employee of an employer . . . who is or may become eligible to receive a benefit of any type from an employee benefit plan which covers employees of such employer." 29 U.S.C. § 1002(7). There appears to be no dispute that Plaintiff has standing under the ERISA statue to bring the fourth cause of action.

To establish Article III standing, a Plaintiff must show: (1) they have suffered an injury-in-fact; (2) the injury is fairly traceable to the challenged conduct of the defendant; and (3) the injury is likely to be redressed by a favorable judicial decision. *Spokeo, Inc. v.*

18-cv-2856-GPC

*Robins*, 578 U.S. 330, 338 (2016). As an initial matter, the Court notes that the Order granting Defendants' Motion to Dismiss the FAC was published prior to the Supreme Court's most recent ruling on Article III standing in *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190 (2021). As such, the analysis in this Order differs from the standing analysis in the Order dismissing the FAC.

An injury-in-fact "must be concrete, that is, real, and not abstract." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2204 (2021). "'[C]oncrete' is not . . . necessarily synonymous with 'tangible.'" *Spokeo*, 578 U.S. at 340; *see also Patel v. Facebook, Inc.*, 932 F.3d 1264, 1270 (9th Cir. 2019). Intangible injuries can be concrete. *TransUnion*, 141 S. Ct. at 2204. However, a plaintiff does not automatically satisfy the injury-in-fact requirement when a statute grants an individual a statutory right, and a statutory obligation does not "relieve courts of their responsibility to independently decide whether a plaintiff has suffered a concrete harm under Article III." *Id.* at 2205.

Here, Plaintiff alleges an informational injury in the sense that Ligand failed to notify Plaintiff of their policy for determining the qualified status of a DRO and Ligand's failure to notify Plaintiff that they had qualified the 401(k) QDRO. Although the Court in *TransUnion* put forth a historical inquiry test to determine when statutory violations constitute concrete injury for the purposes of Article III standing, *TransUnion* leaves untouched, and in effect reaffirms, the possibility of a purely informational injury as in *Federal Elections Commission v. Akins*, 524 U.S. 11 (1998), provided Plaintiff alleges he has suffered some harm as a result of the informational injury. *TransUnion*, 141 S. Ct. at 2214 (stating that an "asserted informational injury that causes no adverse effects cannot satisfy Article III"). An informational injury can constitute concrete harm under Article III so long as Plaintiff alleges actual harm resulting from the informational injury.

Here, Plaintiff alleges that Ligand's failure to provide him information required under ERISA caused him harm because he did not know the "time limits" that were set

18-cv-2856-GPC

by the plan administrator for making determinations, and that if he had this information, he would have better been able to "evaluate his options in contesting the validity of the orders in state court versus other venues." SAC ¶ 120. He also was unable to "evaluate the proper court to apply to for relief or whether Ligand had internal administrative procedures available." SAC ¶ 121. Thus, Plaintiff has identified "downstream consequences" from the informational injury he has suffered under ERISA. *TransUnion*, 141 S. Ct. at 2214 (quoting *Trichell v. Midland Credit Mgmt., Inc.*, 964 F.3d 990, 1004 (11th Cir. 2020)). Plaintiff has pled facts that support more than a "bare procedural violation." *Spokeo*, 578 U.S. at 341.

### 2. Causation

Ligand also argues Plaintiff fails to plead the fourth cause of action because he "does not allege causation—specifically, **how** he would have obtained a better outcome had he been provided with a copy of the Plan's procedures for determining the qualified status of domestic relations orders." ECF No. 100-1 at 25 (emphasis in original). The Court disagrees for the reasons stated in the previous section. Plaintiff's Second Amended Complaint clearly alleges that failure to receive a copy of the Plan's procedures caused him harm in the sense that he was not able to best evaluate his options for how to proceed with challenging the orders. Thus, Plaintiff has properly pled standing and causation to support the fourth cause of action.

### C. Ninth Cause of Action

Plaintiff's ninth cause of action alleges that Defendant Young breached a protective order by using confidential information acquired from Ligand to obtain the QDRO and DRO. SAC ¶¶ 170, 172. Defendant Young states that this allegation fails as a matter of law because the terms of the protective order itself permit the alleged breaches. ECF No. 97 at 35 (citing Young Exhibit 21). Plaintiff failed to oppose Defendant

Young's challenge, and thus the Court finds Plaintiff concedes this argument and that the ninth cause of action must be **DISMISSED**.

### D. Twelfth Cause of Action

Plaintiff's twelfth cause of action alleges Ligand violated ERISA's anti-retaliation provision, § 510, when it terminated his employment in alleged retaliation for his exercise of rights under ERISA. SAC ¶ 95. To establish a claim under this provision, Plaintiff must show that: (1) he participated in a statutorily protected activity; (2) an adverse employment action was taken against him; and (3) a causal connection existed between the two. *Kimbro v. Atl. Richfield Co.*, 889 F.2d 869, 881 (9th Cir. 1989).

Defendant Ligand argues the twelfth cause of action is barred by the statute of limitations. ECF No. 100 at 22. Because § 510 of ERISA does not contain its own statute of limitations, the Court must apply the most analogous state law statute of limitations period. Here, the most analogous statute of limitations is the two-year statute of limitations for wrongful termination. *See Karamsetty v. Wells Fargo & Co.*, 967 F. Supp. 2d 1305, 1321 (N.D. Cal. 2013). At the motion to dismiss stage, "a complaint cannot be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts that would establish the timeliness of the claim.'" *Hernandez v. City of El Monte*, 138 F.3d 393, 402 (9th Cir. 1998) (quoting *Supermail Cargo, Inc. v. United States*, 68 F.3d 1204, 1207 (9th Cir. 1995)). The Court agrees with Plaintiff that it is not apparent the statute of limitations has run because the allegedly retaliatory conduct started in January 2019 and continued until he was terminated in June 2021. ECF No. 106 at 22. The SAC was filed in May 2022. ECF No. 92. It is not apparent from the face of Plaintiff's SAC that there is no set of facts to establish the timeliness of his claim.

Further, the Court finds Plaintiff has adequately pled his retaliation claim. Plaintiff states his protected activity was bringing an action under ERISA to correct alleged ERISA violations. SAC ¶ 195. Plaintiff alleges he suffered an adverse employment action

18-cv-2856-GPC

in the form of salary reduction and termination. SAC ¶¶ 199-200, 202. Last, Plaintiff pleads facts to show a potential causal link—the retaliatory action occurred after Plaintiff commenced this action. Thus, Plaintiff has stated a claim under ERISA's anti-retaliation provision.

## VII.   Personal Jurisdiction as to Young

Defendant Young also raises a challenge based upon lack of personal jurisdiction. Because the Court has dismissed all claims against Defendant Young, this challenge is moot.

## VIII.  Motion to Seal

Young filed a motion to file documents under seal accompanying her Motion to Dismiss the SAC. ECF No. 112. Young seeks to file under seal Exhibits 1-11 and 15-20. ECF No. 112. To support her argument, Young cites the prior sealing order by the Texas state court which oversaw the case for which these documents were filed. ECF No. 112. The Court has previously granted Young's motions to seal documents filed in Texas state court and San Diego superior court, and those documents are identical to the Exhibits in the present motion. ECF No. 64. Given the prior sealing order by the Texas state court and for reasons similar to those stated in the Court's prior Order granting motions to seal, the Court **GRANTS** Young's motion to file Exhibits 1-11 and 15-20 under seal.

## CONCLUSION

Based on the above reasons, the Court **GRANTS** Defendant Young's Motion to Dismiss in full. The Court **GRANTS** in part and **DENIES** in part Defendant Ligand's Motion to Dismiss. Specifically, the second, third, fifth, sixth, seventh, eighth, ninth, tenth, and eleventh causes of actions are **DISMISSED WITH PREJUDICE**. Only Plaintiff's first, fourth, and twelfth causes of action as to Defendant Ligand and the 401(k) Plan remain.

34

1

**IT IS SO ORDERED.**

2

3    Dated:  October 27, 2022

4    _____
     Hon. Gonzalo P. Curiel
5    United States District Judge

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

18-cv-2856-GPC